SPENCER, Plaintiff in error, vs STATE, Defendant in error.

*May 25—June 20, 1907.*

*Criminal law: Evidence: Constitutional law: Admissibility of testi-
mony given at preliminary examination: Disability of witness:
Refreshing recollection: Cross-examination: Reputation for ve-
racity: Immaterial errors: Abandonment and nonsupport of
wife: Instructions to jury: Cruel and unusual punishment.*

1. Where a witness who testified at the preliminary examination
   of defendant has since become permanently incapacitated men-
   tally or physically to testify at the trial, his testimony given
   at said examination is admissible, as in the case of a witness
   since deceased. Such evidence was admissible at the time of
   the adoption of our constitution, and sec. 7, art. I, guarantying
   the right of the accused "to meet the witnesses face to face,"
   merely preserved the right as it then existed.
2. The examining magistrate, in such a case, having testified that
   he took down the testimony fully and accurately and incorpo-
   rated it in his return, was properly permitted to state what
   such testimony was, using the return to refresh his recollec-
   tion.
3. Cross-examination of a witness by defendant as to occurrences
   prior to a certain date was properly disallowed where all di-
   rect testimony of the witness as to occurrences prior to that
   date had been stricken out on defendant's motion, and the

witness had not testified to any other fact to which the alleged occurrences bore any legitimate relation.

4. A witness having testified that he had lived for many years in the city where defendant did business and had known him for fifteen years, was asked if he knew what defendant's reputation in that community was for truth and veracity, and answered that he "never heard the question discussed one way or the other." *Held*, that it was error to strike out such answer; but, there being little dispute as to the vital facts in the case, the error was not material.

5. In a criminal action against a husband for neglecting to support his wife, the charge of the court on the subject of refusal of the wife to live with defendant is *held* to have fully covered the principle stated in a requested instruction, so that the refusal of the latter was not error.

6. It appearing that defendant knew that his wife's means were entirely inadequate to provide for her needs; that he knew she had applied to the town for aid as a pauper; and that when requested to provide for her he had refused to do so— there was no error in refusing a requested instruction to the effect that if he was never informed that her means were exhausted his refusal to support her was not unreasonable and the jury should find him not guilty.

7. Where husband and wife live separately by consent, if she becomes destitute to his knowledge and he thereafter, though of sufficient ability, refuses to provide for her or go near her or arrange for her support in any way, he has thereby abandoned her, within the meaning of sec. 4587c, Stats. (1898).

8. Where it appeared that the defendant husband had a home and was able to provide for his wife, an instruction as to what constituted abandonment of a wife within the meaning of the statute was not prejudicially erroneous merely because it omitted to state as a necessary element of the offense that the husband should be of sufficient ability to support her.

9. Where a statute authorizes the infliction of either of two punishments the fact that one of them is objectionable as being cruel and unusual does not render the whole statute void.

10. A statute authorizing punishment of a husband who should wilfully abandon his wife leaving her in a destitute condition, or should unreasonably refuse or neglect to support her, by imprisonment in the state prison or in the county jail, and providing that ten days of the imprisonment in the county jail might be upon a diet of bread and water only, does not provide for a cruel and unusual punishment within the meaning of sec. 6, art. I, Const.

ERROR to review a judgment of the circuit court for Green Lake county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

For the plaintiff in error there were briefs by *Perry Niskern,* attorney, and *Thompson, Thompson & Pinkerton,* of counsel, and oral argument by *J. C. Thompson.*

For the defendant in error there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and *Philip Lehner,* of counsel, and oral argument by *Mr. Titus.*

WINSLOW, J.   The plaintiff in error (hereinafter called the defendant) was convicted of wilfully abandoning and neglecting to support his wife, and brings his writ of error to reverse the judgment. The questions raised pertain to rulings upon the admission of evidence and upon instructions given or refused, and will be briefly considered.

1. The defendant's wife was very ill, suffering with rheumatoid arthritis and consumption, with no hope of recovery, and was unable to appear in court at the time of the trial, and upon this fact being made to appear the court, against objection, allowed the officer before whom the preliminary examination was held to give in detail her testimony as given by her on such examination. This ruling is challenged as fatal error.

Our constitution guarantees to the accused in all criminal prosecutions the right "to meet the witnesses face to face." Const. art. I, sec. 7. This right has always been deemed one of the most sacred and valuable safeguards of the citizen. It protects him against the peril of conviction by means of *ex parte* testimony or affidavits given in his absence or when he had not the right of cross-examination. It should not be infringed except upon the gravest necessity and in order to prevent miscarriage of justice. Notwithstanding this provision it has been quite universally recognized that dying declarations of a person claimed to have been murdered re-

lating to the circumstances of the death may be introduced on the trial of the alleged murderer. *Miller v. State,* 25 Wis. 384; *Hughes v. State,* 109 Wis. 397, 85 N. W. 333. It has also been held with substantial uniformity that the testimony of a deceased witness given upon a former trial of the case or upon the preliminary examination may be admitted. *Jackson v. State,* 81 Wis. 127, 51 N. W. 89.

These apparent exceptions are justified on the ground that they were well recognized at the time of the adoption of our constitution, and that the constitution does not *grant* the right of trial by jury, but simply secures the right as it existed of old. The text-books quite generally state broadly that the evidence of a witness given at a former trial or examination between the same parties may be introduced if the witness has since died, become insane or sick and hence unable to testify, is out of the jurisdiction, or has been kept away from the trial by the opposite party. 1 Greenl. Ev. § 163; Cooley, Const. Lim. (7th ed.) 451; 2 Wigmore, Ev. §§ 1401–1409. So far as civil actions are concerned this is probably a sufficiently accurate statement of the general rule. As to criminal prosecutions, however, the authorities do not justify such a broad statement, except where the witness has died or has been kept away from the trial by the opposite party. In these cases the authorities are very numerous and practically uniform that the testimony may be received. Wharton, Crim. Ev. (9th ed.) § 227, and authorities cited in note 4; Chamberlayne's Best on Ev. (Int. ed.) § 496, p. 448; *Mattox v. U. S.* 156 U. S. 237, 15 Sup. Ct. 337.

In the case of illness or insanity or other physical or mental disability there has been considerable contrariety of opinion. Our examination of the authorities brings us to the conclusion that the English rule in criminal cases was that mere temporary illness or disability of the witness, where there was prospect of recovery, was not sufficient to justify

the reception of the former testimony, but that it must appear that the witness was in such a state, either mentally or physically, or both, that in all reasonable probability he would never be able to attend the trial. When this fact satisfactorily appeared it was considered that the situation was practically the same as if the witness were dead. 1 Roscoe, Crim. Ev. (8th Am. ed.) 104, 105; *Rex v. Hogg* (1833) 6 Carr. & P. 176; *Reg. v. Wilshaw* (1841) Carr. & M. 145; *Reg. v. Marshall,* Carr. & M. 147; *Marler v. State,* 67 Ala. 55; *McLain v. Comm.* 99 Pa. St. 86.

There is much reason in this rule. The accused has met the witness face to face. He has had the opportunity to cross-examine. The witness is to all intents and purposes dead. Why should not the evidence already given be admitted for the same reason that it would be admitted if the witness were in fact physically dead? We see no logical ground of distinction. It is true that there is a remote possibility that the court may be imposed upon by a feigned illness, but, on the other hand, there is far more danger that justice may miscarry or fail entirely if the testimony be excluded. The evidence of the sick or insane witness may be absolutely essential to conviction, and he may linger along for years until other essential evidence has disappeared and thus a serious crime may go unpunished. We are aware that there are authorities to the contrary of this view. It was said in an early case in Virginia (*Finn v. Comm.* 5 Rand. 701) that even the death of the witness would not justify the reception of the former evidence in a criminal case, and this remark was cited in *People v. Newman,* 5 Hill, 295; but the remark was *obiter* and has long since been disapproved by the great current of authority everywhere. In *State v. Staples,* 47 N. H. 113, it was held that the evidence of a witness given on a previous trial who was sick at the time of the last trial could not be received, and it was said that in no case was such evidence admissible unless the witness were shown to be dead.

In a subsequent civil case, however, it was said that this limitation was unfounded, and the evidence of a witness on a former trial who had subsequently become insane was received. *Whitaker v. Marsh,* 62 N. H. 477. In *Comm. v. McKenna,* 158 Mass. 207, 33 N. E. 389, the former evidence of a sick witness was excluded, and it was said that in that state the practice was to confine such testimony to cases where the witness had died. No discussion of the authorities, however, was had in that case. In *U. S. v. Angell,* 11 Fed. 34, it was held, citing the Virginia and New York cases above named, that in criminal cases, if the witness is living, he must be produced though beyond the jurisdiction of the court, and that no case had been found to the contrary. The examination of the authorities made in that case was evidently not complete. In *Cline v. State,* 36 Tex. Crim. Rep. 320, 36 S. W. 1099, 37 S. W. 722, it was squarely held (overruling previous cases) that the evidence of a witness on the examining trial could not be received on the trial of the action, though the witness had died in the meantime, because it violated the constitutional right of confronting the witnesses. This case stands practically alone among recent decisions, and a very learned and complete dissenting opinion quite fully demonstrates its unsoundness both historically and philosophically.

In this state it is established by the decision in *Jackson v. State,* 81 Wis. 127, 51 N. W. 89, that such evidence is admissible when the witness is dead because it was admissible under the common law at the time of the adoption of our constitution, and the constitution simply preserved the rights then existing. We are convinced that that same rule applied at common law to the evidence of a witness who had become permanently insane or incapacitated mentally or physically, and hence that such evidence is not to be rejected by reason of the constitutional provision. We express no opinion as to the effect of absence of the witness from the jurisdiction

of the court when such absence is not procured by the defendant.

But it is said that the examining magistrate did not give the testimony of the sick witness from his recollection, but that his minutes of the testimony were allowed to be read in evidence, contrary to the rule laid down in *Zitske v. Goldberg,* 38 Wis. 216. The record does not substantiate this contention. It shows that the magistrate was put on the stand and testified that he took down the testimony fully and accurately, and that the same was incorporated in the return; that by using the return he could state what the witness testified to; and he then proceeded to state what her testimony was, using the return to refresh his recollection. This was proper within the rule of the *Goldberg Case.*

It is further insisted that the defendant was denied the right of cross-examination, and that hence the testimony should not have been received. It appears that, after cross-examining at some length, the defendant's counsel asked several questions as to occurrences prior to January, 1900, and that objections to these questions were sustained by the magistrate. As the direct evidence of the witness concerning occurrences prior to January, 1900, had been stricken out on defendant's motion, and as the witness had not thereafter testified to any fact occurring prior to January, 1900, or any other fact to which these alleged occurrences bore any legitimate relation, the rulings were strictly proper.

2. The defendant was sworn as a witness in his own behalf, and the state upon rebuttal called witnesses impeaching his reputation for truth and veracity. Thereupon the defendant called witnesses to sustain his reputation for truth, one of whom testified that he had lived at Berlin (where the defendant did business) for many years and had known defendant for fifteen years. He was then asked if he knew what defendant's reputation in that community was for truth and veracity, and answered: "I never heard the ques-

tion discussed one way or the other." This answer was stricken out on motion of the state, and the defendant excepted.

We cannot approve this ruling. When a witness is called to support a man's character for truth and veracity it is not necessary that he should have heard that character discussed. If so, the most upright man in the community might be unable to bring witnesses to support his veracity. It is said by Mr. Jones in his work on Evidence (vol. 3, § 868) that "it is not a necessary condition that he should have *heard the reputation of the witness discussed* or called in question, since it is to be presumed that those who are well acquainted with the witness and his associates would have heard of the fact if his reputation for truth and veracity was often assailed or called into question." This proposition is well sustained by authority and reason. However, we are not disposed to reverse the judgment because of this erroneous ruling. There is so little of really material dispute between the defendant's version of the vital facts in the case and the state's claim that the question of the defendant's truth and veracity was of little moment.

The facts admitted by the defendant himself or shown by undisputed evidence may be briefly stated as follows: The defendant and complaining witness were married in 1888 and lived together with some intervals of separation until January, 1900, but not very happily. At the last-named date they were living with defendant's mother on a small farm near Berlin. The complaining witness was sick at the time, and by consent she went to live with two sisters living on a small farm near by, in which farm she had a small undivided interest. She took with her $400 in money of her own and defendant's note for $32. The defendant visited her quite frequently, and in the summer of 1900 took her on a trip to Green Lake for ten days. She returned to her sisters after this trip, and there was talk at times of her returning to live

with defendant, at which times defendant said to her that, if she would take her interest out of the farm on which her sisters lived or leave it there and get rent for it, defendant would provide a home for her. She, however, did not return. Defendant contributed a few insignificant sums to her support and paid the note and visited her occasionally. Her means, including her interest in the land, became exhausted as early as 1904, and thereafter her sisters and half-brother supported her. She became sick and practically bedridden in 1903, and has since remained in that condition, but growing worse. Defendant made no inquiries as to her financial condition, and was not informed of the exhaustion of her means nor asked to support her. He had some property at the time of the separation, which has been deeded away, but he had a business and a home with his mother, and at all times was able-bodied and felt able to support her. In April, 1906, she made application to the town authorities for support as a pauper, and the town chairman informed the defendant of this fact immediately afterward, to which defendant replied that he would not do a thing for her. He made the same reply to the district attorney on May 3d, and this prosecution was commenced on May 11th, charging that the abandonment and neglect to support took place on May 3d. This statement of the facts, which are either shown by the defendant's own testimony or are not disputed by him, enables us to consider the errors claimed to have been made in the charge or in the rulings upon instructions requested.

3. The defendant requested the giving of the following instruction, which was refused:

"Even though you find from the evidence that in January, 1900, the defendant's wife left her home where she was living with the defendant, with defendant's consent at that time given, yet if you find that thereafter defendant asked her to return to his home and she refused to do so, then in such case defendant would be no longer obliged to support her, and his refusal to do so would be with reason."

The court charged, however, on this general subject as follows:

"It is the reciprocal duty of the wife to live with the husband on his providing, or offering to provide, a suitable home and suitable support for her. She may not, on his so offering, refuse to live with him in such home and still look to him for support, and if she does so refuse he is then under no legal obligation to provide for her."

This instruction covered the principle stated in the requested instruction, and hence there was no error in the refusal.

4. The following requested instruction was also refused:

"If you find from the evidence that at the time defendant's wife went from defendant's home in January, 1900, she had and took with her separate property of her own amounting to the sum of $400, and was then the owner of some real estate, and that defendant was informed by her soon after January, 1900, that she was paying her own expenses while staying at her sisters', and that thereafter she did pay her own expenses, and defendant was never informed, before commencement of this prosecution, that her means were exhausted, nor informed of her sale of her real estate for her support, then in such case refusal of defendant to support his wife would be reasonable, and would not be an unreasonable refusal, and you should find the defendant not guilty."

We think this request was properly refused for at least two reasons. The defendant knew that his wife took but a small sum of money with her when she went to her sisters, and that this sum was entirely inadequate to properly provide for her wants for six years in her feeble condition. It seems absurd, therefore, even to intimate to the jury that the defendant might not have known that her means were exhausted; but, further than this, it stands admitted that he knew in April that she had applied for aid to the town as a pauper, and when requested to provide for her profanely refused to do so. This was certainly pretty clear information that she

claimed to be destitute and at least imposed on him the duty of ascertaining what the facts were. He could not thereafter urge that he believed in good faith that she still had sufficient means for her support.

5. The court charged the jury as follows:

"A husband is not absolved from his liability to support his wife, however, from the mere fact that she is living separate from him, if she is living apart from him by his procurement or with his consent, or in accordance with his request or wishes or otherwise without being herself at fault. The obligation and duty to support still rests upon him. And if a wife, being *thus apart* from her husband, becomes destitute, and her husband, being aware of her destitute condition, wilfully remains away from her, leaving her in such condition, this is an abandonment by the husband within the meaning of the law."

This instruction is said to be erroneous because it confuses the two crimes covered by the information and the statute, namely, wilful abandonment and unreasonably neglecting to support being of sufficient ability. It is argued that, while such circumstances might constitute neglect to support if the husband were of sufficient ability, they cannot constitute abandonment. We regard the argument as fallacious. There may, doubtless, be such a thing as what may be called "constructive abandonment." If husband and wife live separately by consent, and the wife becomes destitute to the husband's knowledge, and he thereafter, though of sufficient ability, refuses to provide for her or go near her or make any arrangements for her support in any way, either at his own home or elsewhere, he has just as effectively abandoned her as though he had departed from the state leaving her in a destitute condition. This is really what the instruction means. It is true that to be entirely accurate it should have included, as a part of the basis for the finding of abandonment, that the husband had the means or ability to provide a home, but as it appeared in this case that the husband

had a home and was in fact of sufficient ability to provide for his wife, the omission is not in any respect prejudicial.

6. It is argued that the statute is unconstitutional because it provides a cruel and unusual punishment. The statute provides that upon conviction the defendant shall be punished by not exceeding one year's imprisonment in the state prison, or in the county jail not more than six months nor less than fifteen days, ten days of which imprisonment in the county jail may, in the discretion of the court, be upon a diet of bread and water only. The bread-and-water clause of the punishment is attacked as cruel and unusual. As matter of fact the defendant was sentenced to imprisonment in the state prison, and it cannot well be claimed that, because the statute authorizes the infliction of either of two punishments, one of which is objectionable, the whole statute is thereby made void. We are of opinion, however, that the clause in question may well be justified as providing an appropriate punishment for an aggravated case of abandonment or failure to support.

*By the Court.*—Judgment affirmed.