THE STATE OF KANSAS, *Appellant*, v. ROBERT E. GILLMORE, *Appellee.*

No. 18,282.

SYLLABUS BY THE COURT.

1. DESERTION AND NONSUPPORT —*By Husband—Penalty—Statute Constitutional.* Chapter 163 of the Laws of 1911, relating to desertion and nonsupport of wife by husband, or of children by either parent, is not unconstitutional by reason of the provisions of section 4, relating to orders for periodical payments, nor because of the requirement of section 7, relating to wages of one confined at hard labor, nor because the punishment is unusual.

2. ——— *Object of the Statute.* The chief object of the act is to compel the husband, when able, to support his family, and wherever he deserts his wife, leaving her in destitute or necessitous circumstances it is his duty to provide for her there unless some reason be shown why she should follow him elsewhere.

3. ——— *What Constitutes a Violation of the Statute.* The offense is committed either by deserting and leaving her in destitute or necessitous circumstances or by neglect or refusal to provide for her whenever after such desertion she becomes destitute or necessitous. And a husband who deserted his wife in such circumstances and left the state before the act took effect, and after it became operative voluntarily

returned to be a witness in a civil action between other parties and while· here neglected or refused to provide for her, she then being in destitute and necessitous circumstances, thereby rendered himself liable to prosecution.

4. PLEA TO JURISDICTION—*Properly Denied.* In a criminal case a plea to the jurisdiction which goes only to matters of defense may properly be denied.

5. —— *Plea—Proof—Verification.* A plea to the jurisdiction is not receivable unless proved or positively verified.

Appeal from Stafford district court. Opinion filed February 8, 1913. Reversed.

*John S. Dawson,* attorney-general, *Ray H. Beals,* county attorney, and *Paul R. Nagle,* of St. John, for the appellant.

*Van M. Martin,* and *F. L. Martin,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEST, J.:· Section 1 of chapter 163 of the Laws of 1911 provides:

"That any husband who shall, without just cause, desert or neglect or refuse to provide for the support and maintenance of his wife in destitute or necessitous circumstances; . . . shall be guilty of a crime and, on conviction thereof, shall be punished by imprisonment in the Reformatory, or Penitentiary, at hard labor, not exceeding two years."

On May 11, 1912, a complaint was sworn to before a justice of the peace of Stafford county charging:

"That on the —— day of April, 1911, and from then continuously to the filing of this complaint, at the county of Stafford, state of Kansas, the said defendant, Robert E. Gillmore, being then and there the husband of one Rosamond Gillmore, did then and there unlawfully, willfully, feloniously and without just cause desert and neglect and refuse to provide for the support and maintenance of his said wife, she, the said Rosamond Gillmore, being then and there in destitute and necessitous circumstances."

The defendant was arrested and filed a motion to quash, which was overruled, and after a preliminary hearing, the defendant was bound over to the district court for trial. On the 13th day of May an information was filed containing substantially the same charge as indicated, in response to which the defendant filed a paper unnamed setting out that he denied the jurisdiction of the court over his person and over the subject matter of the action, and that he entered his special appearance for the sole purpose of this plea; that he was arrested on the 11th day of May; that he left the state of Kansas in 1908, and had been a resident of Texas continuously for the past three years, and had not been in Kansas since 1909 until he came on May 6, 1912, to act as a witness in a case between his wife and other parties; that he intended to return to Texas where he resided, and when about to take the train on the 10th of May he was arrested on a warrant issued by Justice Mace, from which arrest he was discharged on May 11; that when attempting to take the train on the date last mentioned he was again arrested on a warrant of Justice Swartz, before whom he entered his special appearance and moved to quash, which motion was overruled; that the justice proceeded with the preliminary examination and although there was no testimony showing or tending to show that the defendant had ever been in Kansas from April 1, 1911, until and including May 6, 1912, and although it was shown to the justice that the defendant was a resident of Texas and had been during the times named in the warrant, and no evidence showing that he had been in Kansas subsequent to March 29, 1911, when the act under which he was arrested took effect, he was nevertheless bound over; that he came to Stafford county as a witness in the cause mentioned and for no other purpose and was endeavoring to return at the earliest possible moment at the close of the case in which he

came to testify; that he believed he was illegally restrained of his liberty by the sheriff of Stafford county and that the laws of Kansas can have no extraterritorial effect and that he could not be guilty of violating the act in question, and that he believed if it were the intention of the legislature to apply the provisions of such act to nonresidents who were living apart from their wives prior to its passage that such act is unconstitutional and *ex post facto,* and defendant believed he was exempt from arrest because he had come merely to be a witness. This was sworn to on belief only. To this paper the state demurred, and after argument the court not only overruled the demurrer but discharged the defendant, and the state reserving the question for review, appeals and assigns error in the ruling of the trial court.

The defendant contends that the act is unconstitutional because section 4 provides that before trial, with the consent of defendant, or at the trial on entry of a plea of guilty, or after conviction, instead of sending the defendant to the penitentiary or reformatory, or in addition thereto, the court in its discretion may make an order subject to change from time to time directing the payment of a certain sum periodically for a term not exceeding two years to the wife, guardian, curator or custodian of the minor child or children, or to an organization or individual approved by the court as trustee, and shall have power to release the defendant from custody on probation for a period so fixed upon his giving a recognizance with or without surety in such sum as the court or judge may order and approve. Also, that it is unconstitutional because section 7 authorizes the warden or official in charge of the penitentiary or reformatory to pay over to the wife or to some one for the minor children, at the end of each week for their support, a sum equal to such amount as may be allowed by law to such convict for each day's hard labor performed by him. It is

also contended that as the statutes of Kansas can have no extraterritorial effect, and as it is the wife's duty to reside at the husband's domicile which was here shown to be in Texas, he could not default in her support until demand was made at that place; that if he owed a duty to support his wife it was a duty to support her in Texas and not in Kansas.

The provision requiring the warden to pay a sum equal to the daily wage of the convict can hardly render the act unconstitutional as there is no law in existence for which the convict receives wages for his labor.

The fact that the court is authorized instead of putting the sentence into execution at once to parole and recognize the defendant on condition that he provide periodical support for his wife does not render the act void for diversion of a fine from the direction required by section 6 of article 6 of the constitution, which requires the proceeds of fines for the breach of any penal laws to be applied exclusively to the support of common schools. The payment required under this sort of order is the payment of a sum found by the court to be reasonable for the support of a wife by virtue of which payment the defendant escapes the penalty of the law, and it can by no process of reasoning be rightfully considered a fine.

As to the paper filed by the defendant, we think it should be considered as an attempted plea to the jurisdiction of the court. It appears to have been so treated by both parties and by the trial court, and we know of no other designation which could with propriety be applied to it.

The general rule is not only that a plea to the jurisdiction must be certain, but that if it contain matters of defense merely, it may with propriety be overruled.

"Where an indictment is taken before a court that has no cognizance of the offence, the defendant may plead to the jurisdiction, without answering at all to the crime alleged;  .  .  .  Such pleas are not com-

mon, the easier and simpler course being writ of error or arrest of judgment. The want of jurisdiction may also be taken advantage of under the general issue." (Wharton's Crim. Plead. and Prac., 9th ed., § 422.)

"By this plea, the defendant totally denies the authority of the court to try him; . . . But it seems that the defendant can not plead to an indictment before justices, that the offence was committed at some place beyond their jurisdiction, for this would amount to no more than the general issue." (1 Bishop on Crim. Procedure, 3d ed., § 736.)

"This plea is seldom used, as the objection may be taken in other ways. This plea will be proper when the court before which the indictment is preferred has no cognizance of the particular crime, either because of the nature of the crime, or because it was not committed within the territorial jurisdiction of the court, or when the court has no jurisdiction of the defendant's person. Objection to the jurisdiction may generally be taken advantage of under the plea of not guilty, or the general issue, and need not be specially pleaded, or it may be successfully raised by motion in arrest of judgment, or on appeal or writ of error, or by demurrer, when the want of jurisdiction appears on the face of the indictment or in the caption. A plea to the jurisdiction is therefore seldom resorted to. The plea, being dilatory, must be certain to every intent. The highest degree of certainty is required." (Clark's Criminal Procedure, § 130.)

While the question of jurisdiction may be raised at any time (*Rice v. The State of Kansas*, 3 Kan. 141, syl. ¶ 5, 161), still "it is proper for the district court to overrule a plea to the jurisdiction of the court, which substantially raises the question of the guilt or innocence of the accused." (*The City of Salina v. Cooper*, 45 Kan. 12, syl. ¶ 2, 25 Pac. 233; *The State v. Bailey*, 57 Neb. 204, 77 N. W. 654.)

Section 162 of the criminal code provides that "no plea in abatement or other dilatory plea to an indictment or information shall be received by any court unless the party offering such plea shall prove the truth thereof by affidavit or some other evidence."

The State v. Gillmore.

The oath of the defendant that he merely believed the contents of the paper filed to be true did not amount to an affidavit. (*The State v. Gleason,* 32 Kan. 245, 4 Pac. 363.) The demurrer challenged the sufficiency of the plea. Whatever of substance the paper contained was, if anything, matter of defense and the demurrer was erroneously overruled.

Assuming, however, that the paper should have been considered as a properly drawn and verified plea to the jurisdiction it was insufficient, although this sort of pleading and practice is novel in our criminal law. The statute is disjunctive and the crime is committed either by desertion and leaving the wife destitute, or by neglect or refusal to provide for her support and maintenance when in destitute or necessitous circumstances. In *State v. Dvoracek,* 140 Iowa, 266, 118 N. W. 399, it was held that the venue may be laid in the county where the duty to support should be discharged. It was also said in the opinion concerning an act quite similar in terms:

"Analyzing this, it becomes apparent that any one of three acts stated disjunctively may subject a person to the penalty denounced. The act of abandoning his children had been consummated prior to the taking effect of the act, and this, doubtless, accounts for the omission to charge him therewith." (p. 268.)

In *The State v. Witham,* 70 Wis. 473, 35 N. W. 934, the statute made it a misdemeanor to abandon the wife, leaving her in a destitute condition, or, being of sufficient ability, to refuse or neglect to provide for her, and it was held that such abandonment before the act took effect but continued down to the time of the trial subjected the defendant to the penalty. It was said:

"By the act of abandonment, leaving his wife in a destitute condition, the husband incurs the penalty. He also incurs the penalty, when, being of sufficient ability, he refuses or neglects to provide for her support. In the present case, while the abandonment oc-

curred before the law took effect, still the willful re-
fusal to provide for his wife continued to the time of
trial.    This rendered the defendant liable, under the
statute, for the penalty incurred or imposed for such
neglect."    (p. 475.)

The wife was alleged to be in destitute circumstances
in Stafford county, and the defendant was charged with
there deserting and there neglecting and refusing to
provide for her support and maintenance.    The fact
that when the act was passed he was in Texas could
be no defense; that he had come voluntarily into
Stafford county to appear as a witness in a case be-
tween other parties was no bar to his arrest for a
violation of the criminal laws of Kansas.    His plea that
he believed that his domicile had been in Texas since
1908, or even such fact, if it were a fact, of itself, fur-
nished no reason why his wife should be left or per-
mitted to remain in Kansas in destitute circumstances.
Had it been shown that she had wrongfully refused to
follow him to his domicile in Texas and thus in law
abandoned or deserted him, this might be a defense.

In *Commonwealth v. Bailey*, 1 Leg. Gaz. Rep. 87,
both parties had their domicile in Delaware and the
desertion was in Massachusetts, for which the hus-
band was arrested in Pennsylvania, where it was held
that the court had no jurisdiction.    But in *State v.
McCullough*, (Del.) 1 Pennewill, 274, 40 Atl. 237, it
was ruled that it was sufficient that the husband be in
the state and that he neglect without cause to support
his wife, regardless of where he abandoned her.
*People v. Pettit et al.*, 74 N. Y. 320, was a case wherein
it was shown that when the parties were living apart
the husband gave a recognizance for her support.    He
then offered to take her to his father's house, where
they had formerly lived, and to support her there, but
not elsewhere.    She refused to go for the reason that
she would not live in the house with his parents, and
that it was unfit because of his father's drunkenness

and abusiveness.  It was held that the husband was not guilty of failing to support her—on the theory that he had a right to choose the domicile.  A violation of the statute as it was worded made the delinquent a disorderly person, and the court found no evidence of disorder in the offer to support the wife at the domicile chosen by her husband.  *People v. Vitan,* 10 N. Y. Supp. 909, is cited.  There the parties were domiciled in Pennsylvania, where the wife left her husband and went to reside in New York.  He afterwards came to live in another county in New York.  While calling on her he refused to live with or support her.  The court held that this did not render him subject to punishment as a disorderly person on the ground that he had abandoned his wife in the county where he was living, and that knowing, after she had left him without legal cause, that he was residing in another county she should have made her demand there.  Had he first abandoned her without cause and left her destitute, a different question would have arisen.  It was held in *Burton's Case,* 109 Va. 800, 63 S. E. 464, that under a statute making it a misdemeanor to desert or willfully neglect to provide, the violation may be charged as having occurred at the time of desertion or at any time during its continuance.  The court said:

"In order to establish the offense . . . it must be made to appear that without just cause he deserted or willfully neglected to provide for the support of his wife or minor children, leaving them in destitute or necessitous circumstances.  They may be in destitute circumstances at the time the desertion takes place, or they may become destitute as a consequence of the desertion on the part of the husband and his willful neglect to provide for their support.  The object of the statute was to compel the husband, if he were able to do so, to support his wife and children.  It is a continuing duty, and the breach of it may be stated as having occurred at the moment of the desertion or at any time during the continuance of the willful neglect

to make provision for his wife or minor children whom he has left at the moment of desertion, or who have since been rendered destitute or in necessitous circumstances." (p. 804.)

*State v. Sanner*, 81 Ohio St. 393, 90 N. E. 1007, involved a statute making it an offense to neglect or refuse to provide when able for the wife or children living within the state, and it was held that a parent might be guilty although residing in another state, as the venue is in the county where the child is when the complaint is made. The supreme court of Wisconsin decided in *Spencer v. State*, 132 Wis. 509, 112 N. W. 462, that a husband having the means was punishable for failure to support his wife who became destitute to his knowledge, although they were living separate by consent. The theory of a continuing offense is fully recognized in *State v. Stout*, 139 Iowa, 557, 117 N. W. 958.

The defendant's statement that he verily believed it was not the intention of the legislature to apply the provisions of the act to "non-residents who were living apart from their wives prior to the passage of said act" indicates the notion that mere living apart from a wife relieves the husband from the duty to support, which is neither good law nor good morals. In his brief his counsel ask:

"When he came into Kansas for a temporary and lawful purpose, was he violating the law and committing a crime by failing and refusing to support his wife while here? If during the few days he was in Kansas, he had supported his wife, would he be innocent of the crime charged?"

As to the first question we reply that according to the information he was violating the law, and there was nothing shown in his plea to the contrary. As to the second query we feel confident that had he provided for his wife's support during the few days he was here he would at least be in much better relation

The State v. Gillmore.

to the law than he now is.   It is insisted that before he can be in default the wife must demand of him in Texas that he provide for her.   This presupposes that the circumstances were and are such as to make it her duty to follow him to the other state, and as already suggested, he alleged nothing showing such duty on her part.   Counsel say:

"He may admit that he deserted his wife in Kansas in 1908, the law not then being in effect.   He can not be tried for desertion under this law even if he deserted her in Texas, in 1909."

But he can be tried for failure to support her in the place where he deserted her unless he can show some legal excuse, which he has not done thus far.

It is suggested that the act is void because the punishment provided is unusual.   Hard labor in the penitentiary or reformatory not exceeding two years, with the incidental provision for the enforcement of orders for support which if obeyed work a stay of execution is certainly not more unusual than the Wisconsin penalty of six months in jail on bread and water.   Of that Justice Winslow said in the Spencer case (132 Wis. 509, 112 N. W. 462):

"We are of opinion, however, that the clause in question may well be justified as providing an appropriate punishment for an aggravated case of abandonment or failure to support."   (p. 520.)

The penalty is severe, but evidently the legislature believed that this very feature would act as a deterrent to faithless husbands and pitiless fathers who might be tempted to leave wife and child without support or care.   Its severity need trouble no one who possesses sufficient manhood and decency to entitle him to remain outside prison walls.

The ruling of the trial court is reversed with directions to proceed in accordance herewith.