*In re* A. T. FOWLES, *Petitioner.*

No. 18,649.

SYLLABUS BY THE COURT.

1. HABEAS CORPUS—*Jurisdiction Over Conduct of Nonresidents.* One state will not seek to censor or control the conduct of citizens and residents of other states unless such conduct results in an infraction of its own laws.

2. NONRESIDENT PARENT—*Resident Destitute Child—Desertion Act Applies.* A citizen and resident of another state who without lawful excuse knowingly permits his child under sixteen years of age to be and remain here in destitute or necessitous circumstances without providing for the support and maintenance of such child thereby violates the desertion act (Laws 1911, ch. 163), and may be punished therefor.

3. —— *Destitute Child—When Nonresident Father May be Punished under Desertion Act.* When upon such charge the father is arrested in another state and, waiving requisition, comes in the custody of an officer, the courts of this state have jurisdiction to try him upon such charge although he has never before been within this state. But when after having thus come he is discharged by writ of habeas corpus by the probate court of the county where the charge was laid, and before having an opportunity to return is rearrested on the same charge, the state has no right to retain and try him for failure to support such child after he, the father, was thus brought here, without showing that after so coming he, without lawful excuse, knowingly failed or refused to furnish such support and maintenance.

4. —— *Same.* To render a father liable to punishment for such failure before being thus brought here it must be shown that he knew or ought to have known the location and condition of his child, or that he had by act of omission or commission permitted him to be and remain here in destitute or necessitous circumstances without providing for his support and maintenance.

5. —— *Same.* A sovereign state will not be less fair in its treatment of parties than it requires its citizens to be, and having brought here a citizen and resident of another state upon criminal process to answer for an offense alleged to have been committed while in the state of his residence, it will not upon his discharge and before he has an opportunity to

return, forcibly retain him to answer for an act of omission since he was thus brought here, unless such omission was knowing and willful on his part.

Original proceeding in habeas corpus. Opinion filed April 12, 1913. Petitioner remanded.

*R. E. Melvin,* of Lawrence, for the petitioner.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, and *J. S. Amick,* county attorney, for the respondent.

The opinion of the court was delivered by

WEST, J.: This is an application for a writ of habeas corpus submitted upon an agreed statement of facts.

The petitioner for more than eighteen years, excepting a brief sojourn in Missouri, has been a citizen and resident of Dallas, Tex. With him at that place his wife and their two children lived intermittently from about 1895 to about 1905 or 1906, when she left Texas with their two children and brought them to Lawrence, Kan. It is stipulated that no blame is attached to the husband or wife for the separation. One of the children is a boy now about fourteen years old, healthy and able-bodied, and it is inferable that he has remained at Lawrence since coming there in 1905 or 1906, but with whom it is not shown. On a date not given a complaint was filed before a justice of the peace of Douglas county charging the petitioner with neglecting or refusing to provide for the support and maintenance of this son. A warrant was issued and the petitioner was arrested at Dallas, Tex., and brought to Lawrence, the issuance of requisition papers having been waived, and on February 24, 1913, he was discharged from custody by writ of habeas corpus issued by the probate court. Almost immediately, and before he had an opportunity to leave, he

was again arrested on the same charge upon information filed by the county attorney. February 28 his plea in abatement was sustained, whereupon he demanded to be released, but instead was again arrested on a justice's warrant on the same charge originally made, and placed in jail. The petitioner asserts his right to be discharged from custody upon the theory that he has committed no crime against the state of Kansas, in which he never set foot until brought here in custody as already stated. The state insists that failure to support a destitute child in Kansas is a crime against our laws, and that the petitioner, having come in the custody of an officer without a requisition, is here voluntarily and subject to the jurisdiction of our courts.

The statement of facts, the substance of which has already been stated, is more remarkable for what it omits than for what it contains. From statements made upon the argument and in the briefs, however, we shall assume that about six or seven years ago the wife brought the boy to Lawrence, Kan.; that when the complaint was filed he was in necessitous or destitute circumstances, and that the father was not at that time providing for his support and maintenance. We can not assume, as it is not charged, that the father abandoned the boy at any time, that he sent him to Kansas, or that he had knowledge of his destitute circumstances. Whether, during the years since leaving Texas, he has lived with the mother or with relatives, or during what portion of that time he has been provided for and by whom, we are not advised.

The statute provides:

"That any husband who shall, without just cause, desert or neglect or refuse to provide for the support and maintenance of his wife in destitute or necessitous circumstances; or any parent who shall, without lawful excuse, desert or neglect or refuse to provide for the support and maintenance of his or her child or children under the age of sixteen years in destitute or

*In re* Fowles.

necessitous circumstances, shall be guilty of a crime and, on conviction thereof, shall be punished by imprisonment in the Reformatory or Penitentiary, at hard labor, not exceeding two years." (Laws 1911, ch. 163, § 1.)

The general rule is that the laws of a state have no extra-territorial force and that its crimes act is for the punishment of those within its own borders. Section 10 of the bill of rights provides that in all transactions the accused shall have "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." No argument is needed to show that if the authorities in one state should undertake to censor and punish the conduct in their state of citizens of another state the domestic tranquillity and general welfare mentioned in the preamble to the federal constitution would be seriously disturbed. However, mere physical presence, citizenship or residence within the state is not always essential in order to render one amenable to its laws and subject to its prosecution. The legislature has provided that:

"Every person being without the state, committing or consummating an offense by an agent or means within the state, is liable to be punished by the laws thereof in the same manner as if he were present and had commenced and consummated the offense within the state." (Crim. Code, § 21.)

In the case of *In re Carr, Petitioner, etc.*, 28 Kan. 1, it was said:

"We fully recognize that the power of the state to punish criminals extends to all persons who, being without the state, commit or consummate violations of the penal statutes within our state, 'by an agent or means within the state.' Such persons, although out of the state, are, in contemplation of law, within the state." (p. 5.)

"The legislature of one state can not make laws by which people outside the state must govern their ac-

tions, except as they may have occasion to resort to the remedies which the state provides, or to deal with property situated within the state. . . . But if the consequences of an unlawful act committed outside the state have reached their ultimate and injurious result within it, it seems that the perpetrator may be punished as an offender against such state." (Cooley's Constitutional Limitations, 6th ed., p. 149.)

In *Rex v. Garret,* 17 Jur. 1060, Lord Campbell, C. J., said:

"I do not proceed upon the ground that the offence was committed beyond the jurisdiction of the court, for if a man employ a conscious or unconscious agent to commit an offence in this country, he is amenable to the laws of England, although at the time the offence was committed he was living beyond the jurisdiction." (p. 1062.)

In *Barkhamsted v. Parsons,* 3 Conn. 1, a prosecution was had under a statute providing a forfeiture for the bringing of paupers into the state and leaving them there. It was argued that evidence had been improperly received to show the conduct of the defendant in another state, the only ground of his amenability to the criminal laws being that he owed allegiance, and he could owe no allegiance unless within their protection, and he could not be within their protection unless either a citizen or personally within their jurisdiction. The court said it was conceded that the defendant did not personally bring the paupers, but that he sent them under the care of his son. The court further said:

"The principle of common law, *qui facit per alium, facit per se,* is of universal application, both in criminal and civil cases; and he who does an act in this state, by his agent, is considered as if he had done it in his own proper person." (p. 8.)

In *State v. Peabody,* 25 R. I. 544, 56 Atl. 1028, a complaint alleging nonsupport of minor children in Washington county by a defendant in Kent county was held good for the reason that one is answerable for his

*In re* Fowles.

neglect in the place where others suffer in consequence. It has been held that one can be prosecuted for procuring a drug in another state and sending it by mail to a woman within the state for the purpose of procuring an abortion. (*State v. Morrow*, 40 S. Car. 221, 18 S. E. 853.) The court said:

"Assuming, however, for the purposes of this discussion only, that there was no evidence of any act done in pursuance of an intention to effect an abortion, except such acts as were done by the defendant in the city of Washington, then if the acts there done were intended to take effect in this state, and did there actually take effect, we still think the court in this state had jurisdiction of the offence charged." (p. 237.)

This quotation is supported by numerous authorities cited in the opinion, which rests on the assumption that the defendant voluntarily came into and submitted himself to the jurisdiction of the trial court. The doctrine was announced that it is the duty of the state to protect the lives and persons of its citizens and others temporarily resident therein against unlawful violation or injury, whether committed by citizens or others, jurisdiction of the subject matter and of the person being different questions. Forgery in another state of titles to lands in the state of Texas was held to be an offense against the laws of the latter state, under a statute providing that persons out of the state may commit and be liable to indictment and conviction for offenses which do not in their commission necessarily require personal presence in the state. (*Hanks v. The State*, 13 Tex. App. 289.) A resident of Missouri who turned cattle out of his enclosure knowing that they would go across the line into Arkansas was held not guilty of violating an act of the latter state prohibiting stock running at large. (*Beattie v. State*, 73 Ark. 428, 84 S. W. 477.) A nonresident of a city was held liable to prosecution by its police court for permitting his cow to be at large within the city contrary to a municipal ordinance, although the owner was not within the city

at the time. (*Tutt v. City of Greenville,* 142 Ky. 536, 134 S. W. 890, 33 L. R. A., n. s., 331.) A note to this decision collates a large number of authorities touching the subject under consideration. In the opinion it was said:

"It is the act or thing that is done within the city limits in violation of the ordinance that subjects the doer to the penalty. Where the doer in fact is at the time is a matter of no consequence. Possibly in some cases it might be difficult to get jurisdiction of the person of the offender, so that he might be punished, but this fact would not affect his guilt or his liability to punishment if he could be brought to trial. . . . When appellant permitted his cow to wander at large within the city limits, he as certainly committed an act in violation of its law as if he had himself driven his cow within the limits and turned her at large. There could be no difference between the legal effect and consequence of appellant's act in standing just outside the city limits, and driving his cow into the city to run at large and in leading her into the city and then turning her loose." (p. 538.)

In *Burton v. United States,* 202 U. S. 344, it was decided that the federal court at the place where the agreement was made for compensation to perform services forbidden by statute had jurisdiction to try the offense even if the agreement was negotiated or accepted at another place, its final acceptance and ratification being within the district. *Horner v. United States,* 143 U. S. 207, was cited, which ruled that the Illinois district court had jurisdiction to try one for violating the lottery statute who had sent to persons within that district lottery circulars by mail deposited at New York.

In *The State v. Gillmore,* 88 Kan. 835, 129 Pac. 1123, it was said that the statute in question may be violated either by deserting and leaving in destitute or necessitous circumstances or by neglect or refusal to provide after such desertion when such destitute or necessitous circumstances arise. In *Bennefield v. The State*

*In re* Fowles.

*of Georgia,* 80 Ga. 107, 4 S. E. 869, it was held that the gist of the offense of abandoning a child is the voluntary and willful abandonment of it, leaving it dependent and destitute. There the husband voluntarily and willfully separated from his wife in one county, and sent her and their child by an agent to another county where they became dependent and destitute; and the father was held indictable in the latter county for abandonment, because it was by his act that they were removed from one county to the other. The court said:

"It was the same as if he had stood upon the county line between Heard and Carroll, and had pushed his child across the line into Carroll, and then left it dependent and destitute." (p. 110.)

In *State v. Dvoracek,* 140 Iowa, 266, 118 N. W. 399, it was ruled that the venue in a prosecution for failure to provide for a wife or children is in the county where the duty of providing for them should be discharged. The court said:

"The penalty is denounced, not on the commission of any affirmative act, but on the omission of the plainest duty. Necessarily, then, the venue depends on where the omission to perform the duty occurred. . . . He owed no such duty elsewhere, and, because of the situation of his wife and children, must have omitted the duty in Story county, or not at all. Somewhat akin in principle is the line of cases deciding that the venue in embezzlement cases may be laid in the county in which it was the duty of the accused to account. . . . The presence of the offender within the county where a crime is committed is not always essential, but some portion of the act or omission to act must have taken effect therein." (p. 270.)

In *State v. Sanner,* 81 Ohio St. 393, 90 N. E. 1007, 26 L. R. A., n. s., 1093, under an act providing that the offense shall be held to have been committed in any county of the state in which the destitute child or children may be at the time the complaint is made, it was determined that a parent may be guilty of the

crime of failing to provide for his minor children although a resident of another state during the time laid in the indictment; that the venue is in the county where the child is when the complaint is made. Before the provision as to venue already quoted was added by amendment it had been decided that one could not be thus prosecuted who resided in another state during the time laid in the indictment. (*State v. Ewers,* 76 Ohio St. 563, 81 N. E. 1196.) The latest decision we have found is *In re Poage* (100 N. E. 125), by the supreme court of Ohio, delivered November 12, 1912. A citizen and elector of Kentucky was indicted in Lawrence county, Ohio, for failure to provide for his minor children therein. On application for habeas corpus he averred that he was married in Kentucky, established a home for himself and family there, where he had ever since resided and where the child was born; that without any just cause and without his knowledge or consent and against his wishes, his wife abandoned their home and took the child with her into Ohio, where she had remained ever since and refused to return or permit the child to return, although the father had at all times maintained the home in Kentucky for her and the child, and had been ready and willing at all times to provide for them there food, shelter and clothing. It was held that it appearing that the child received support from the mother, or some one else at her request, the mere failure and neglect of the father, after considering his legal right to the custody and control of the child, did not bring him within the operation of the statute. It was said that a parent may be guilty of failing to provide, although a resident of another state, and that the venue may be properly laid where the child is domiciled when the complaint is made, but that it by no means follows that the legislature may control domestic relations of citizens of another state who have never resided in the complaining state, or compel the performance of parental duties and obligations arising under the laws of the

state of their residence, where the defendant is not responsible, either by acts of omission or commission, for the child being temporarily in the complaining state.   The court then said:

"It is sufficient to say that it must at least appear, either that he has brought or compelled them to come into this state and then abandoned them, or that having been brought into this state by others, even against his will, they were then abandoned and permitted to become homeless and unprovided for.   Clearly, in such case it would be the duty of the father to assert his legal right to their care and custody, and provide them with a home, food, shelter and clothing, and his failure to do so would be an offense against our laws.   This legislation is for the benefit of the child.   It is passed for the purpose of enforcing the natural duties of parents to their children.   This duty is owing to the child wherever the parent entitled to its control and custody places it, or wherever, in disregard of his parental duty and obligation, he permits it to remain unprovided for.   So that citizens of another state can not permit their children to become objects of charity in this state and defend against a prosecution under our laws to compel parents to provide for their minor children by the plea that they are not citizens of this state; but where such child is brought into this state against the will and consent of the parent, and is provided with a suitable home, food, shelter and clothing by those responsible for bringing it into the state, or by others procured by them to furnish the same, it is then no concern of our state and no offense against our laws."   (100 N. E. 128.)

The officer who arrested the petitioner was clothed only with the authority of a warrant issued by a justice of the peace of this state, but as the person sought came across the line without demanding a requisition, he must be held in law to have come into the state voluntarily to the extent and in the sense that the court had jurisdiction to try him for a crime already committed here by him.   (*The State v. Garrett,* 57 Kan. 132, 45 Pac. 93; *The State v. McNaspy,* 58 Kan. 691, 50 Pac.

895.) However, he came to Lawrence in custody and not of his own motion or volition.

In the Gillmore case (88 Kan. 835, 129 Pac. 1123), it was said:

"That he had come voluntarily into Stafford county to appear as a witness in a case between other parties was no bar to his arrest for a violation of the criminal laws of Kansas. His plea that he believed that his domicile had been in Texas since 1908, or even such fact, if it were a fact, of itself, furnished no reason why his wife should be left or permitted to remain in Kansas in destitute circumstances. Had it been shown that she had wrongfully refused to follow him to his domicile in Texas, and thus in law abandoned or deserted him, this might be a defense." (p. 842.)

The decision in the case just quoted from is based upon the proposition that having come voluntarily into the county where he had previously abandoned his wife, and having voluntarily remained there some days, and having failed to provide for her support or maintenance, she being in destitute and necessitous circumstances, he was liable to prosecution. Here the petitioner did not come into the state voluntarily, in the sense in which Gillmore came, and only in a strict legal sense; he did not voluntarily remain here at all, and was prevented from a speedy return upon his discharge by the probate court by another arrest on the same charge, and is now involuntarily in jail. A sovereign state can not afford to be less fair and decent in its treatment of parties than it would require its citizens to be, and it would be taking an unfair advantage of the applicant to assume or imagine that the state is really attempting to prosecute him for knowingly and voluntarily permitting his son to be in Douglas county in destitute circumstances and failing to provide for him since being brought here by the officer. The only fair and straightforward way to treat the situation is to regard it as a prosecution for a failure to support before the petitioner came into the state. The county

*In re* Fowles.

attorney advises us that the complaint under which
the restraint is now attempted to be justified charges
that the defendant, on or about the first day of Decem-
ber, 1912, willfully and feloniously and without lawful
excuse refused to provide for the support and main-
tenance of the boy, and has ever since refused so to
provide, "and that said William D. Fowles is in desti-
tute and necessitous circumstances." In all fairness
two observations should be made. We can not assume
under the statement of facts on which this case is
presented that the petitioner while in Texas knew
that the son was destitute in Douglas county, Kansas,
and therefore can not assume that he willfully failed
to provide for his support. Again, a charge that in
February, 1913, the son "is in destitute circumstances"
is hardly tantamount to an allegation that he was thus
destitute or necessitous before the father was brought
here in custody of the sheriff.

We think the question of jurisdiction to prosecute
the defendant for failure to support his son before the
arrest depends upon what he really had to do with the
boy's presence in Douglas county, what means were
in fact provided for his support and what knowledge
the father had or should have had of his condition,
and whether or not he was, in the language of the
statute, "without lawful excuse." If, as a matter of
fact, the father, unmindful of his duty and obligations,
permitted the mother to remove the child to this state
under such circumstances that he was obligated for
his support, and with knowledge or reasonable means
of knowledge that his child was destitute and likely to
become a public burden upon Douglas county, then we
think without question his conduct was as reprehen-
sible and as punishable as it would have been had he
brought the child here and abandoned him on pur-
pose. On the contrary, the mere facts that without
fault of the parents as to their separation the child was
brought here something like seven years ago by his

mother and presumably has remained here since, and, as the stipulation shows, has become a healthy, able-bodied boy at least fourteen years of age, and was at some time after the father had been brought here in custody of an officer, actually in destitute circum-stances, would not of themselves constitute a crime or vest the court with jurisdiction to try him.

What the real facts of the case are we do not know, and as the petitioner has not shown affirmatively that he is entitled to a discharge, the writ is denied.

PORTER, J. (dissenting) : On the agreed statement of facts I think the petitioner should be discharged.