## No. 8809.

### KILPATRICK v. THE PEOPLE.

1. CRIMINAL LAW—*Non-Support of Wife.* The husband is not liable to prosecution under c. 179 Laws 1911, where the wife has left him without reasonable cause, and without cause, refuses to return to him.

2. —— *Divorce—Allowance of Temporary Alimony—Effect.* An allowance of temporary alimony to the wife in an action brought by her for divorce, is not admissible in evidence against the husband, in a prosecution for non-support.

3. —— *Evidence.* A judgment in a civil action is not admissible in a criminal prosecution against one of the parties thereto, to establish the facts upon which the judgment was based, even though the civil action involves the identical question in issue in the criminal prosecution.

*Error to Larimer County Court, Hon. Fred W. Stover,*
*Judge.*

Mr. WM. H. DICKSON, Mr. FORREST L. NICOL, for plaintiff in error.

Hon. LESLIE E. HUBBARD, Attorney General; Mr. BERTRAM B. BESHOAR, Assistant Attorney General, for The People.

Opinion by Mr. Justice Allen:

THE plaintiff in error, defendant below, was prosecuted under the non-support statute (Chapter 179, Session Laws

1911). The information was filed October 7, 1915, and alleged, in substance, that on or about December 5, 1914, "and from thence continually until the day of the date hereof," the defendant willfully neglected, failed and refused to provide reasonable support and maintenance for his wife and child. Upon the trial the jury rendered a general verdict of guilty.

The evidence shows that the defendant and his wife were married in Denver in March, 1911, and then moved to Craig, Routt County, where they resided and lived together until March, 1914, and where the defendant continued to reside. On or about March 26, 1914, the wife left her husband's home in Craig, and came to Ft. Collins, Larimer County. She did not thereafter return to Craig, but resided in Larimer County, separate and apart from her husband, ever since.

Upon cross-examination, the wife testified that the reason she left Craig at the time she did was "because mother was sick," and that during the time the parties lived together, her husband, the defendant, provided for her support and the support of the child. The testimony shows that on three different occasions after the separation, the defendant came to Larimer County and tried to get his wife to come back with him to their home in Routt County, which she refused to do.

The defendant testified that his wife at the time she left Craig to visit her mother at Ft. Collins did not say she was not coming back, and that prior to that time she never intimated that she was going to leave, and also that the first intimation he got that she was not coming back was about eight or ten days after she left, when he received a letter from her from Ft. Collins.

The trial court refused to permit the defendant to show what reason his wife at that time gave for not coming back, and also what reasons she gave for not going back to Craig when he came to Larimer County to ask her to go back home with him. The defendant was not permitted

to show what he did to get his wife to return to Routt County.

Counsel for the defendant sought on cross-examination of the complaining witness, the wife, to show why she never returned to Craig. Such examination proceeded but a short ways when counsel for the people objected "on the ground that it is immaterial," etc., and the objection was sustained by the court. Later on counsel for defendant was pursuing a line of inquiry in cross-examining the witness, and upon objection being made by the prosecution, informed the court that "the purpose of this is to show that she left the defendant without reasonable excuse." The trial judge in sustaining the objection, remarked, "I think it is wholly immaterial as to the reasons."

The trial court also refused to permit counsel for defendant to show on cross-examination of the complaining witness that she could at any time return to Craig and have support from her husband.

In accord with its rulings on the admissibility of testimony, the court instructed the jury, "that the question whether or not the wife was justified in leaving her husband is immaterial so far as the issues of this case are concerned."

Assignments of error are predicated upon the foregoing instruction and upon the court's rulings on evidence above indicated.

At common law the husband is not required to contribute to the support of his wife where she without just cause refuses to live with him. 21 Cyc. 1152. Our statute provides that, "any man who shall willfully neglect, fail or refuse to provide reasonable support and maintenance for his wife," etc., "shall be deemed guilty of a felony." Similar language in the statutes of other states has been treated in numerous cases as not implying or adding any further obligation upon a husband in addition to that resting upon him at common law. The non-support statutes have been regarded only as enforcing, and not as creating, a duty

on the part of husbands and fathers with reference to the support of wives and children.

In *People v. DeWolf*, 118 N. Y. S. 75, the accused was convicted under a criminal statute declaring a person who shall neglect to provide for his wife, according to his means, a disorderly person, and it was held that a conviction is not sustainable where she left him without adequate excuse. In *People v. Pettit*, 74 N. Y. 320, it was held, under the same or a similar statute, that the husband is not guilty of neglecting to support his wife if he offers to support her if she will live with him, and she refuses because of alleged fear of personal violence without having a reasonable and substantial apprehension of violence, based upon sufficient facts. In *People v. Flewellyn*, 111 N. Y. S. 621, the court said:

"In the case at bar, inasmuch as the defendant is ready and willing to support her if she will go with him away from her people as the evidence shows he is, then she should go with him."

The court then held that the evidence failed to show that the defendant was guilty under the information which included a charge that he neglected to provide for his wife.

In the case of *Spencer v. State*, 132 Wis. 509, 112 N. W. 462, 122 Am. St. Rep. 989, 13 Ann. Cas. 969, an instruction of the trial court is quoted as follows:

"It is the reciprocal duty of the wife to live with the husband on his providing, or offering to provide a suitable home and suitable support for her. She may not, on his so offering, refuse to live with him in such home and still look to him for support, and if she does so refuse he is then under no legal obligation to provide for her."

An instruction quoted in *Jenness v. State*, 103 Wis. 553, 79 N. W. 759, reads, in part:

"* * * and if, without legal excuse, she abandons her home, or unreasonably refuses to live with her husband, she forfeits her rights to his support. * * * When she offers to live with defendant and discharge her conjugal duties,

she will then be in a position to invoke the law to compel him to perform his duties if he refuses to do so."

The foregoing quotations appear to us to state the law applicable in criminal prosecutions under our non-support statute.

In the case at bar the defendant was entitled to be permitted to show, and the jury to consider, whether or not he was willing, and in good faith offered, to support his wife at his home in Routt County, during the time named in the information, and also whether or not the wife left his home, and refused to return to the defendant without any reasonable excuse. Under the rulings and instruction of the trial court these matters could not be shown or considered. If it had been established that the wife left the defendant without an adequate excuse, refused without reasonable grounds to return to him, and he offered and was willing to support her if she returned, he could not be convicted of wilful non-support of his wife. As said in *Hopkins v. State*, 126 Wis. 104, 109, 105 N. W. 223, "the question whether the wife's conduct was such as not to make it criminal for him to refuse or neglect to furnish such support was a question of fact for the jury, under proper instructions from the court." The rulings on evidence and the instruction, hereinbefore mentioned, therefore constituted prejudicial error.

Over the objection of the defendant, the prosecution was permitted to introduce in evidence a temporary alimony order entered by the same court on December 19, 1914, in a divorce proceeding wherein the defendant and his wife were parties. Error is assigned to the introduction of this order, and will be considered for the reason that the temporary alimony order in question was the basis of the trial court's refusing to permit the defendant to show the matters tending to establish a defense, hereinbefore discussed. The trial judge in ruling upon the evidence, as above shown, made the following remarks:

"I take the view in this particular case that since the court has by order fixed a status of the parties as to sup-

port, that is that the defendant in another action which happens to be in this court, has been ordered to support his wife and child here; I don't see how any offer to support her elsewhere would make any difference, because that has been fixed and determined. * * * the matter before us now is why he has not supported her here, as ordered by the court."

\*                    \*                    \*

(This prosecution) is based upon the status established by that order. * * * the status of the parties as to support, place, amount, and so on, has been fixed by this court."

The errors hereinbefore pointed out were not cured by the introduction in evidence of the order for temporary alimony in the divorce proceeding, but an additional error was committed in permitting the order to be so introduced. the defendant was, in the case at bar, on trial for an alleged felony, and the state was required to prove its case beyond a reasonable doubt. 21 Cyc. 1615. As a defense, the defendant was entitled to show, if he could, that the prosecuting witness without adequate excuse left the matrimonial domicil of the parties, and then without any reasonable cause remained away from the home provided for her by the defendant, and where he would be willing to receive and support her. The trial court held that the temporary alimony order "established a status between the parties," as to support and place of support. The temporary alimony order did not, however, fix the status of the parties so far as this criminal action is concerned. The order recites that it is made "on motion of the plaintiff." Had the motion been denied the defendant could take no advantage of it in this proceeding, and likewise the prosecution cannot prove the status of the parties by introducing in evidence the temporary alimony order.

In *Comm. v. Simmons*, 165 Mass. 356, 43 N. E. 110, it was held that on the prosecution of one for non-support, a decision in a divorce suit by such person, denying the wife's motion for alimony *pendente lite*, is not admissible.

The reason for such holding is applicable in the case at bar. The court in the case above cited said:

"These prosecutions under (the non-support statute) * * * are independent of the proceedings for a divorce, and are to be tried and disposed of upon the facts appearing upon the allegations contained in them. The decision of the superior court upon the question whether it would order the payment of alimony *pendente lite* did not de-determine the status of the parties, and did not settle the question whether it was the duty of the defendant to support his wife and children under the circumstances then existing. Moreover, the parties in that suit were not the same as in this, and for that reason the evidence was incompetent."

The status as fixed by the temporary alimony order was not settled even in the divorce proceeding. The order was subject not only to modification but also to vacation. 14 Cyc. 760. Even if regarded as settled, the status in the divorce case was determined upon a mere preponderance of the evidence, while in a criminal prosecution the status, if material, must be proven beyond a reasonable doubt. It would be unjust to the defendant in this case to regard the status as conclusively settled or as already proven beyond a reasonable doubt, merely because the court, in a civil action, fixed the status so far as that may be done by an order for temporary alimony. Reasons for this conclusion sufficiently appear in the authorities cited below.

"The general rule is that a judgment in a civil action cannot be given in evidence in a criminal action to establish the facts on which it was rendered." *State v. Weil*, 83 S. C. 478, 65 S. E. 634, 26 L. R. A. (N. S.) 461.

"A judgment in a civil action is not admissible in a subsequent criminal prosecution although exactly the same questions are in dispute in both cases, for the reason that the parties are not the same, and different rules as to the weight of the evidence prevail. It would not be just to convict a defendant by reason of a judgment obtained against

him civilly by a mere preponderance of the evidence." ———, 15 R. C. L. 1004, § 480, citing *State v. Bradnack*, 69 Conn. 212, 37 Atl, 492, 43 L. R. A. 620; *Riker v. Hooper*, 35 Vt. 457, 82 Am. Dec. 646; and note in 103 Am. St. Rep. 23.

For the errors above named the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Decision *en banc.*