·No. 21,468.

THE STATE OF KANSAS, *Appellee*, V. WILLIAM T. WELLMAN,
*Appellant.*

SYLLABUS BY THE COURT.

1. EXTRADITION—*Nonsupport of Child—Absence of Accused from State —Jurisdiction of Kansas Courts.* Although the federal law does not provide for the surrender by a state as a fugitive from justice of one · who has violated the criminal laws of another state without having been present therein, and although in the absence of state legislation no authority exists for such surrender, nevertheless, where, in the absence of any local statute, a person is surrendered by one state to another as a fugitive from justice, the fact that the accused had not been in the demanding staté at the time of the alleged offense, or since then, does not deprive its courts of jurisdiction to try him therefor, nor does it show such an abuse of process as to warrant the dismissal of the case against him.

2. SAME. A person who has never been in this state may, under some circumstances, be rightfully convicted here of a violation of the statute making it a felony for a parent,· without lawful excuse, to neglect or refuse to provide for ·the support of his children under the· age of sixteen years, who are in destitute circumstances.

3. DIVORCE—*Deserted Child in Kansas—Husband in Missouri—Jurisdiction of Kansas Courts.* Where by the misconduct of a husband and father in another state his wife and children are compelled to leave him, and they come to Kansas, and where in an action in which personal service has been had upon him she obtains a divorce and a decree awarding her the custody of the children, and requiring him to make periodical payments for their support, he may thereafter, while in another state, be guilty of a violation of the statute referred to, by failing to provide in any way for the children, notwithstanding that they were brought into this state without his knowledge or consent.

4. CRIMINAL LAW—*New Trial—Evidence Must be Produced on Motion.* The provision of the civil code that, in order to preserve for review a ruling excluding evidence, the evidence must be produced at the hearing of the motion for a new trial, applies as well in criminal cases, inasmuch as the criminal code makes such a ruling, if erroneous, a ground of new trial only by the adoption of the civil procedure in relation thereto.

5. TRIAL—*Statement of Trial Judge Nonprejudicial.* A statement by the trial judge held not to be shown to have been prejudicial to the defendant.

6. NONSUPPORT OF CHILD—*Child Cared for by Others—No Defense of Parent.* In a prosecution under the statute making it a criminal

offense for a parent to neglect or refuse, without lawful excuse, to provide for the support of his children in destitute or necessitous circumstances, it is not a defense for a father upon whom rested the duty of providing such support to show that the necessities of the children were relieved by the interposition of others.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed February 9, 1918. Affirmed.

*M. A. Gorrill,* and *Henry H. Asher,* both of Lawrence, for the appellant.

*S. M. Brewster,* attorney-general, *J. B. Wilson,* county attorney, and *J. H. Mitchell,* of Lawrence, for the appellee.

The opinion of the court was delivered by

MASON, J.:, William T. Wellman appeals from a conviction on the charge of having violated the statute making it a felony for a parent, without lawful excuse, to neglect or refuse to provide for the support and maintenance of his child under the age of sixteen years, who is in destitute or necessitous circumstances.

The period within which the defendant is charged to have been guilty of such omission extended from November 10, 1916, to February 10, 1917. During that time and until after his arrest he was not in the state of Kansas, but was living in Kansas City, Mo., and his three children. were with their mother—his divorced wife—in Lawrence, Kan. His arrest was made under color of the federal law respecting the interstate rendition of fugitives from justice, the governor of Kansas having made a requisition upon which the governor of Missouri issued a warrant, under which he was arrested and turned over to the Kansas officials.

1. The defendant maintains that the district court acted without jurisdiction because, not having been in this state at the time of the alleged commission of the offense charged, he was not a fugitive from justice, and therefore was not within the provisions of the federal statute referred to. In this contention, so far as relates to the regularity of the arrest, he is borne out by the authorities. The rule invoked results in the unfortunate and anomalous possibility that a murderer standing in North Carolina (for instance) may shoot and kill a man

just over the line in Tennessee, and escape conviction in the former state on the ground that he had committed no crime within its jurisdiction (*State v. Hall,* 114 N. C. 909), and avoid prosecution in the latter because, not being a fugitive from justice, he is not amenable to interstate rendition. (*State v. Hall,* 115 N. C. 811; 11 R. C. L. 731; 3 Fed. Stat. Ann., 2d ed., 288, 289; 19 Cyc. 87.) It has been determined that in order to be regarded as a fugitive from justice within the meaning of the federal act the accused need not have left the state where the offense is alleged to have been committed, for the purpose of avoiding arrest. (19 Cyc. 87; 11 R. C. L. 732.) Inasmuch as it has been decided that a person may be treated as a fugitive from justice "no matter for what purpose or with what motive, nor under what belief" he left the demanding state (*Appleyard v. Massachusetts,* 203 U. S. 222, 227), even although it was with the knowledge and consent of, and without objection by, the public prosecutor, after the dismissal of one indictment for the same offense (*Bassing v. Cady,* 208 U. S. 386), it would seem that by similar reasoning, and perhaps on the theory of a constructive presence in a state where a crime resulted from his act (dissenting opinion, *State v. Hall,* 115 N. C. 811, 820), it might have been held also that a person could under exceptional circumstances be regarded as a fugitive from justice even with respect to a state whose boundaries he had never physically crossed. But that is a federal question and has been decided to the contrary by the court of last resort. (*Hyatt v. Corkran,* 188 U. S. 691, 712, 713.)

Granting, however, that the governor of Missouri was not required by the federal statute to issue a warrant for the arrest of the defendant, that there was no statutory authority for the issuance of such warrant, and that he might have been discharged upon a writ of habeas corpus if he had sought that relief before being brought into this state, it does not follow that there is any defect in the jurisdiction of the court by which he has been tried and convicted, or that he can now derive any advantage from the fact that his presence here is not due to his own consent or to any process of law valid in Missouri. No right within the protection of the federal government is invaded by the method by which the defendant's presence was procured. (*Pettibone v. Nichols,* 203 U. S. 192.)

While the federal statue does not impose a duty upon the governor of a state to recognize a requisition for the delivery of a person who is accused of an offense committed while he was not personally within the state whose laws he is charged with breaking, there would seem to be no legal obstacle to a state's providing by statute for the surrender of a person within its jurisdiction to a state whose laws he is accused of violating while not physically within its borders, although without such legislation no authority therefor exists. (19 Cyc. 85; 11 R. C. L. 732; *Innes v. Tobin*, 240 U. S. 127.) But where, without such enactment, a voluntary surrender is made, the want of statutory authority for the arrest does not defeat the jurisdiction of the court before which the accused is brought. Even a forcible abduction from another state is generally regarded as not having that effect. (19 Cyc. 99; 12 L. R. A., n. s., 225; 15 L. R. A. 177.) The conclusion that the want of statutory authority to bring the defendant in this case from Missouri into Kansas does not prevent his trial and punishment after he has been lodged in custody here, as the result of his surrender by the Missouri authorities, results logically from the decision of this court in *In re Flack*, 88 Kan. 616, 129 Pac. 541. It had originally been held, in compliance with what was then believed to be the federal rule, that a person brought into this state from another by interstate rendition could not be tried here upon any other charge than that on which the process was based. (*The State v. Hall*, 40 Kan. 338, 19 Pac. 918.) After the supreme court of the United States had held that no federal right would be violated by such a course (*Lascelles v. Georgia*, 148 U. S. 537), the way was still open for this court to refuse to countenance the holding of the accused upon any new charge. The decision rendered, however, was that the defendant might be tried upon other charges than those on which his arrest was made, and thereby the court repudiated the theory that the right of the public to inquire into the guilt of an accused person, and to punish him if he was found to have violated its laws, depends upon the regularity of the method by which his presence in the state was brought about. Whether a state shall surrender a person within its jurisdiction who is accused of having broken the criminal laws of another state, without having been personally present therein, is

a matter of its own domestic policy. If, without a statute on the subject, its courts hold such course to be legal, the correctness of the decision could not be a matter of inquiry elsewhere; and if, without a judicial decision, the executive officers assume that such conduct is proper and act upon the assumption, the person surrendered has no just ground of complaint against the authorities of the state whose laws he has broken—certainly none which ought to entitle him to escape punishment for his offense. Where evidence has been obtained by an invasion of the defendant's legal rights it is not necessarily rendered inadmissible against him. (*The State v. Turner*, 82 Kan. 787, 109 Pac. 654.) And where a nonresident of the state has broken its criminal laws, its right to punish him ought not to be dependent on the regularity of the proceedings by which he was surrendered to its officials. In *In re Moyer*, 12 Idaho, 250 (affirmed in *Morey v. Whitney*, U. S. 222), the authorities on the subject are collected, and the grounds of this view are well stated in this language:

"We are of the opinion that after the prisoner is within the jurisdiction of the demanding state, and is there applying to its courts for relief, he cannot raise the question as to whether or not he has been, as a matter of fact, a fugitive from the justice of the state within the meaning of the federal constitution, and the act of Congress. A careful and diligent examination of the many authorities touching upon this subject, and the reasons that exist for invoking the aid of the writ in such cases, convince us that the question as to whether or not a citizen is a fugitive from justice is one that can only be available to him so long as he is beyond the jurisdiction of the state against whose laws he is alleged to have transgressed. It is a remedy which does not go to the merits of the case, and does not involve the inquiry as to whether or not he is in fact guilty or innocent of the offense charged. It is a remedy that merely goes to the question of his removal from the jurisdiction in which he is found to the jurisdiction against the laws of which he is charged with offending. If these views be correct, and we believe they are, it follows that so soon as the prisoner is within the jurisdiction of the demanding state, both the reason and object for invoking this principle of law have ceased and can no longer have any application. . . . The warrant of the chief executive of the state surrendering the prisoner, whether issued lawfully or unlawfully, has accomplished its purpose and becomes *functus officio*, so soon as the prisoner is delivered into the jurisdiction of the demanding state, and its validity and the regularity of its issuance thereupon cease to be questions open to the consideration of the courts of the demanding state. . . . One who commits a crime against the laws of the state, whether committed by him while in person

on its soil or absent in a foreign jurisdiction, and acting through some other agency or medium, has no vested right of asylum in a sister state [citing cases], and the fact that a wrong is committed against him in the manner or method pursued in subjecting his person to the jurisdiction of the complaining state, and that such wrong is redressible either in the civil or criminal courts, can constitute no legal or just reason why he himself should not answer the charge against him when brought before the proper tribunal." (pp. 255, 256, 257.)

We do not regard the conclusions stated as in conflict with what is decided in *The State v. Simmons,* 39 Kan. 262, 18 Pac. 177. That was a proceeding in contempt against two persons for their failure to appear as witnesses in response to a subpœna. An attachment was issued against them on which a Kansas sheriff arrested them in Nebraska and brought them in irons into this state, where they were adjudged guilty of contempt. On appeal, the judgment was reversed because of the unlawful means used to bring them before the court. The *jurisdiction* of a district court to try a person on a charge of having committed a public offense does not depend upon how he came to be in this state. These might, however, in a particular case, be such oppression and want of fair dealing in the matter as to justify a dismissal of the case. But we do not think such course is required by the fact that the defendant has been surrendered by the authorities of another state without the existence of any statute requiring such action on their part.

2. The defendant also insists that the statute on which the prosecution is based does not apply to him, because of his absence from the state at the time of the commission of the alleged offense. He argues that while it is possible for one who is outside of the state to violate its criminal laws, this can only result under the conditions named in the statute which reads:

"Every person being without the state, committing or consummating an offense by an agent or means within the state, is liable to be punished by the laws thereof in the same manner as if he were present and had commenced and consummated the offense within the state." (Gen. Stat. 1915, § 7930.)

This statute is but declaratory of the common law. (12 Cyc. 208; 8 R. C. L. 101.) It does not purport to enumerate all the conditions under which a person absent from the state may become an offender against its punitive laws. If the failure of a

parent who is outside of the state to take any action at all, with respect to a child who is in the state, and to whom he owes an affirmative duty, is not to be regarded as consummating an offense by an agent or means within the state, and therefore not within the purview of the statute quoted, it does not follow that he is not amenable to the law here invoked. The section under which the prosecution is brought reads as follows:

"Any parent who shall, without lawful excuse, desert or neglect or refuse to provide for the support and maintenance of his or her child or children under the age of sixteen years in destitute or necessitous circumstances, shall be guilty of a crime and, on conviction thereof, shall be punished by imprisonment in the reformatory, or penitentiary, at hard labor, not exceeding two years." (Gen. Stat. 1915, § 3410.)

The offense here created is essentially one of omission, and the aid of supplementary legislation is not needed to bring a person who is outside of the state within its condemnation.

"Such an offense as desertion or failure to provide for a wife or children is however negative, the omission of a duty, and therefore venue depends on the question where the omission to perform that duty occurs; and where the husband abandons his family and they become destitute, he owes the duty of support at the place of their residence and nowhere else; accordingly, it is usually held that the breach of duty occurs there and the venue should be laid there." (8 R. C. L. 310.)

"While a statute has no extra-territorial force, and one cannot be indicted here for what he does in a foreign country, the making of a contract in a foreign country may, as in this case, create a condition operative in this country, under which acts of omission or commission can be punished here." (Head note, *United States v. Nord Deutscher Lloyd*, 223 U. S. 512.)

This question has already been determined by this court against the defendant (*In re Fowles*, 89 Kan. 430, 131 Pac. 598), and the argument in his behalf amounts to a request to review that decision. We are satisfied with the law as there declared and adhere to the conclusion already reached.

3. The evidence of the state tended to show these facts: The defendant and his wife were married in Kentucky, and later moved to Lawrence, where they resided for some years. In 1911 they moved to Kansas City, Mo. About June 20, 1913, his wife, because of his ill treatment, left him, and with their children came to Lawrence, presumably without his knowledge or consent. In February, 1916, she there obtained a divorce in an action in which personal service had been made upon the

defendant, and was awarded the custody of the children, the defendant being directed to pay a fixed sum each month for their support. From November 1, 1916, to February, 1917, he was earning about $25 a week, but contributed nothing to the support of the children.

The defendant maintains that the fact that his wife brought the children from Missouri to Kansas without his knowledge or consent is fatal to the conviction. The cases bearing on the effect of nonresidence of the defendant upon the enforcement of laws making the desertion or nonsupport of a wife or family a crime, are collected and classified in a note to *The State v. Gillmore*, 88 Kan. 835, 129 Pac. 1123, in 47 L. R. A., n. s., 218. In the note it is said:

"Where the wife after her abandonment removes to another jurisdiction voluntarily and without the husband's consent, the general rule as stated above [holding the husband criminally liable at the wife's residence] will usually not apply, especially in simple abandonment cases, for in such cases it is generally held that the offense is complete where the abandonment takes place, and the wife cannot, by taking up her residence elsewhere, confer jurisdiction upon another court to punish the husband for that offense." (p. 222.)

Two of the New York cases cited under the subdivision relating to removals from one county to another (*People ex rel. Drake v. Bergen,* 36 Hun, [N. Y.] 241, and *People v. Vitan,* 10 N. Y. Sup. 909) arose under statutes relating to abandonment, and proceeded on the theory above indicated—that the offense is not continuous, but is completed when the husband has left his wife, and that her subsequent residence cannot affect the matter. That doctrine manifestly can have no application to cases arising under statutes like our own, which make nonsupport, as well as desertion, a distinct ground of prosecution. In a third New York case it was held, under a different statute, that where a husband and wife had separated by agreement, he was criminally liable for nonsupport in a jurisdiction into which she had subsequently moved. (*People v. Meyer,* 33 N. Y. Sup. 1123.) The remaining case referred to in this subdivision holds that, under a statute similar to our own, a husband whose misconduct has compelled his wife to leave him can thereafter be prosecuted for her nonsupport only in the county in which he resided—not in the one into which she has removed. (*State ex rel. Delevan v. Justus,* 85 Minn. 114.)

Perhaps as between two counties of the same state that rule may be justifiable. For reasons to be hereafter stated we do not think it so as between different states. Three additional cases are cited in the note, bearing upon the interstate phase of the matter. One of them (*People v. Clairmont*, 111 N. Y. Sup. 613) turns on the fact that in a special proceeding against his property the defendant had had no opportunity to be heard; another (*State v. Shuey*, 101 Mo. App. 438) upon the completeness of the offense of abandonment, nonsupport as a separate offense not being involved; and the third (*The City v. Bailey*, 8 Phila. 485) upon that principle combined with the rule, which is not recognized in this state, that a wife cannot under any circumstances acquire a domicile separate from that of her husband. It is therefore clear that outside of the Minnesota case none of those referred to has any close bearing upon the question here involved.

We think that whether the defendant is answerable to the Kansas courts depends upon whether he owed this state a duty to support his children while they were here with their mother. Although he was divorced from her, they were still his children and, except for special circumstances, he was under an obligation to support them. If they had been wrongfully taken by her from his home, where he was ready to care for them, doubtless he would owe no duty to provide for them at the place where she detained them. The statute covers such a situation by penalizing nonsupport only when it is "without lawful excuse." But if through the misconduct of the defendant it became necessary for the mother to remove them from his control he would not be thereby relieved from his obligation to provide for them. What the fact was in this regard was one of the matters involved in the determination of his guilt or innocence. It was shown, however, that in an action to which he was a party, and in which personal jurisdiction over him had been acquired by the service of summons, the district court of Douglas county had awarded the custody of the children to his divorced wife on the ground that he was not a fit person to care for them, and had specifically charged him with the duty of providing for their support. Whatever might have been the situation otherwise, the decree of the court afforded a basis for a finding that the defendant was under a legal duty to provide

for them while they were with their mother in this state. The omission to perform this duty occurred here. The defendant is not being prosecuted for any wrongful behavior which resulted in his wife and children leaving him; such misconduct, if it occurred, could not be a violation of a Kansas statute, but might bring about a condition under which the defendant was under an affirmative obligation to act, and by merely remaining passive might become a violator of our laws. He is under prosecution for his disobedience of the statute, which took place between November 10, 1916, and February 10, 1917, by his then neglecting and refusing to provide for the support of his children. If he had sent his wife and children into Kansas, it would hardly be doubted that he became responsible for their care here. If as a result of his wrongdoing they were obliged to leave him and seek refuge elsewhere, the circumstance that they found shelter in a state which undertakes to punish the neglect of parental duty under such circumstances, when they might have chosen one having a different policy in that regard, imposes upon him no hardship of which he has any standing to complain. Their being here was not due to his deliberate choice, but, according to the state's theory, it was the result of his voluntary misconduct.

4. Complaint is made of the exclusion of evidence, but at the hearing of the motion for a new trial it was not produced. The section of the criminal code enumerating grounds for the granting of a new trial does not refer to the rejection of evidence. (Gen. Stat. 1915, § 8191.) Such a ruling is available in support of a motion for a new trial in a criminal case only by virtue of the provision making the procedure of the civil code applicable thereto. (Gen. Stat. 1915, § 8124; *The State v. Keleher,* 74 Kan. 631, 87 Pac. 738.) The provision of the civil code requiring excluded evidence to be produced at the hearing of a motion for a new trial, if it is to be relied upon (Gen. Stat. 1915, § 7209), therefore applies here and the ruling complained of is not reviewable.

5. At the trial the defendant asked to introduce the record of the decree in the divorce case. An objection to it was sustained, the court saying that if the defendant wanted the jury to know about the order he would state that it was made because the court believed the defendant was in fault and was

Railroad Co. v. Davenport.

not a suitable and proper person to have the custody of the children. The purpose of the introduction of the evidence was said to be to show that the defendant could not interfere with the custody of the children. The statement of the court seems to have answered that purpose. It is argued that the episode, in view of the manner of the trial judge, tended to lead the jury to feel that he was hostile to the defendant, but we do not regard the record as showing that to have been the case.

6. Complaint is made of an instruction to the effect that the children should be deemed to be in destitute or necessitous circumstances within the provisions of the statute, so far as the defendant was concerned, if they would have been in such condition if they had not been provided for by some one else—that it would be no defense to show that their necessities had been relieved by others. This is in accordance with the law as declared in *The State v. Waller*, 90 Kan. 829, 136 Pac. 215.

Objections made to other rulings either relate to the effect of the evidence, as to which the verdict must be regarded as final, or present the same legal questions as those already discussed.

The judgment is affirmed.

DAWSON, J., dissents.