The State v. Miller.

No. 23,664.

THE STATE OF KANSAS, *Appellee*, v. MELVIN D. MILLER, *Appellant*.

SYLLABUS BY THE COURT.

CRIMINAL LAW — *Conviction of Failure to Support Minor Child — Venue — Amendment of Decree.* In 1915, the defendant's wife was granted a divorce in Crawford county and was awarded $11,000 worth of property for the support of herself and infant daughter. Thereafter she lived at various places, and while in Oklahoma sued the defendant for $1,500 for maintenance of the child who from birth has been afflicted with a spinal difficulty necessitating much expense for treatment. She afterwards took up her residence at Fort Scott, Bourbon county, and there caused the arrest of her former husband for failure to support the child, under the desertion act, chapter 163 of the Laws of 1911. The information alleged and the evidence showed the child to be in necessitous circumstances. *Held,* that the venue was properly laid in Bourbon county although the defendant still resided in Crawford county; and *held,* also, that the right of the wife to cause the decree to be amended touching the support of the child is no bar to a prosecution by the state for failure to support.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed December 10, 1921. Affirmed. (See opinion on rehearing, *post,* p. 237.)

*Archie D. Neale,* of Chetopa, for the appellant.

*Richard J. Hopkins,* attorney-general, and *Harry Warren,* county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a conviction of failure to support his minor child. In 1915, he and the complaining witness were husband and wife, living at Pittsburg, when she was divorced from him and given the care, custody and control of their minor child, an attorney's fee of $400, and certain real estate was set apart to her and for her sole use, support, alimony and maintenance. Afterwards the decree was amended to show that the alimony allowed the plaintiff was for her permanent alimony and for the support and maintenance of the child. The wife testified that the property thus allowed her was worth about $11,000. The defendant in the divorce action continued to live in Pittsburg, but the plaintiff lived elsewhere, at various places, and in January, 1921, located in Bourbon county where she was boarding with her child, a daughter about six years old, suffering from some sort of spinal difficulty with which she had been afflicted from birth. While living in Oklahoma,

the mother brought an action against the husband for $1,500 for maintenance of the child, but testified that she did not know what had become of that suit. The information charged failure to support the child from January, 1921, she being in destitute and necessitous circumstances. The court charged, among other things, that the jury must be satisfied beyond a reasonable doubt that the defendant did unlawfully, feloniously and willfully and without lawful excuse neglect and refuse to provide for the child then in destitute and necessitous circumstances, and that the word "necessitous" means needing the necessaries of life, and that his liability would not be changed by the fact, if it were a fact, that she was furnished the necessities of life by her mother or other persons. It was further charged that it was not material which of the parties was at fault in the divorce action, and that if they found that the property awarded had been exhausted and that the child was now destitute, the fact of having contributed such property would be no defense in this action. The defendant was convicted and sentenced to pay the complaining witness $100 on the 14th day of May, 1912, and each month thereafter for two years, and to execute a bond in the sum of $3,500 for the fulfillment of such order. The specifications of error are the denial of a motion for a new trial, refusal to instruct a verdict of not guilty, and giving and refusing certain other instructions.

The defendant's chief contentions are that the venue was improperly laid and that the wife having been divorced on account of the fault and aggression of the husband, and having been given the custody of the child, and the husband having paid her $11,000 alimony for the support of both, he cannot be prosecuted criminally under the desertion act, but could at most be subjected to a change in the decree of the court awarding the alimony.

Some complaint is made touching the alleged necessitous condition of the child and the help of other persons, but in these respects the court followed the decisions already made under the desertion act, and committed no error in respect thereto. The question of venue is well covered by the decisions and citations in *The State v. Gillmore*, 88 Kan. 835, 129 Pac. 1123; *In re Fowles*, 89 Kan. 430, 131 Pac. 598; and *The State v. Wellman*, 102 Kan. 503, 170 Pac. 1052, and reference thereto makes further discussion needless.

That the district court of Crawford county might on proper application and showing further amend its decree is true. (*Walrath v. Walrath*, 27 Kan. 395, 399, 400; *Miles v. Miles*, 65 Kan. 676, 70

Pac. 631; *Rogers v. Rogers,* 93 Kan. 114, 143 Pac. 410; *In re Petitt,* 84 Kan. 637, 114 Pac. 1071; *Greenwood v. Greenwood,* 85 Kan. 303, 116 Pac. 828; *Riggs v. Riggs,* 91 Kan. 593, 138 Pac. 628; *Purdy v. Ernst,* 93 Kan. 157, 143 Pac. 429; *Combs v. Combs,* 99 Kan. 626, 628, 162 Pac. 273.)

Counsel, who naturally feels that an injustice has been done his client, cites *Burritt v. Burritt,* 29 Barb. (N. Y.) 124; *Brown v. Smith,* 19 R. I. 319; *Hall v. Green,* 87 Maine, 122, and *Spencer v. Spencer,* 97 Minn. 56, on the proposition that when the decree of divorce fixes the award for the support of the wife and children, the father is released from all liability for the support of the child unless by change of the decree. In the Burritt case the last paragraph of the syllabus is:

"To make the father thus liable in a case where a divorce has been decreed, and the care and custody of the child are awarded to the mother, and alimony is given to the wife, there must be special circumstances averred in the complaint, or appearing in the evidence, from which the obligation must arise, or may be reasonably inferred."

In the Hall case it was said that—

"When a divorce is granted to a wife and as a consequence of it she has committed to her the care and custody of her minor child, it follows that the father becomes entirely absolved from the common-law obligation which previously rested upon him to support such child; and that the only obligation of the kind afterwards resting upon him consists in such terms and conditions in respect to alimony and allowances as the court may impose on him in the decree of divorce or in some subsequent decree in the same proceeding." (p. 123.)

It was held, therefore, that a common-law action in assumpsit by the wife would not lie against the husband. To the same effect is *Brown v. Smith,* supra. In *Spencer v. Spencer,* the legal obligation of the father was held to be not impaired by a decree of divorce at the suit of the wife which gave her the custody of the children, but was silent as to their support, and it was held that—

"If under such circumstances he refuses or neglects to support them, she may recover from him in an original action a reasonable sum for necessaries furnished by her for their support after such decree." (Syl.)

So it will readily be observed that in each of these instances a civil action by the wife was involved, not one by the state to which she was not a party. True, it was held, as suggested by counsel, in *Harris v. Harris,* 5 Kan. 46, that an action by the wife, who had been awarded the custody of the three minor children, would not lie

to recover against the former husband for the support of a fourth child born two days after the decree was rendered; that her only relief was to open up the decree. That was in 1869. In 1914, this decision was thus interpreted:

"It did not decide that a divorced wife to whom the custody of children has been awarded may not recover from her former husband for advancements made toward the maintenance of children subsequent to the divorce. On the other hand, the right of the mother and the obligation of the father were expressly recognized, the language being, 'do such full justice as the case requires, *having reference to advancements already made.*' Neither was it decided that the remedy lay with the divorce court alone. . . . The court did not have in mind the case of a father who absconds from the jurisdiction of the divorce court and so precludes the burdened mother from resorting to it for relief. . . . But since the obligation does exist, and exists in favor of the mother, the law is not so impotent as to leave her remediless." (*Riggs v. Riggs,* 91 Kan. 593, 597, 598, 138 Pac. 628.)

Still more pointedly may it be said that in none of the foregoing decisions did the court have in mind a criminal prosecution.

The desertion act proceeds upon the theory that the state may compel a father to support his minor child whenever in destitute or necessitous circumstances, either as a public duty lawfully imposed by law, or as a means to prevent the state or the public from having to assume the burden of such support. In *The State v. Wellman,* 102 Kan. 503, 170 Pac. 1052, Mr. Justice Mason, speaking for the court said:

"We think that whether the defendant is answerable to the Kansas courts depends upon whether he owed this state a duty to support his children while they were with their mother. Although he was divorced from her, they were still his children, and, except for special circumstances, he was under an obligation to support them." (p. 511.)

One case has been found which holds in line with the defendant's contention—*State v. Coolidge,* 72 Wash. 42, decided in 1913. The wife had procured a divorce and the custody of the minor child and the husband had been decreed to pay $20 a month for its maintenance, which he failed to do, and was prosecuted under the Washington desertion act, and adjudged to pay $2.50 a week and give a bond to secure his compliance with the judgment. The statute punishes " 'every person who shall willfully and without lawful excuse desert, or willfully neglect or refuse to provide for the support and maintenance of his wife, or child under the age of sixteen years.' " (p. 46.) One peculiar feature of the case was that instead of asking for a change in the decree and that the husband be

compelled to comply with it, the wife began a criminal action in the same court. In discussing this matter it was said:

"The trial judge evidently treated this case as a proceeding in aid of the divorce decree, for he had made an order which in effect modifies that decree, but without reference thereto. This it would seem he should not do, for defendant is now subject to two orders of the same court, one calling for the payment of a certain sum, and the other calling for a different sum. He is subject to a citation for contempt on the civil side, and to a judgment on the verdict and sentence on the criminal side." (p. 45.)

It was decided that this was an unfair usage of the criminal statute and that " 'such a practice is neither in the interest of the parties nor in the interest of society at large.' " (p. 45.) It was further observed that no case had been found holding that—

"When the duty of the father has been measured in money by a court of competent jurisdiction, with power to enforce its decrees, an independent action can be maintained against him, or that appellant may be coerced by a criminal proceeding. The remedy lies in the court of first jurisdiction, to which defendant is answerable, for by its order he has become primarily liable to the court rather than to his former spouse." (p. 45.)

After quoting the statute already referred to it was said:

"It then provides a procedure and punishment, indicating that the legislature had in mind only those cases where a husband deserts or refuses to provide for his wife or a child then in his custody and under his control; that it was not the intention of the legislature to cover by this law any case where the custody and control of the child had been taken away from the parent by the due processes of the law, or where the obligation of the husband to the wife or child had been defined and fixed with penalty by a court of competent jurisdiction." (p. 46.)

But we have before us a much different situation from that presented to the Washington court, and under the facts presented here we are impelled to the conclusion that the state can maintain this prosecution. It may be that a criminal proceeding should not have been begun and that the wife ought to have gone to Crawford county to procure a further change in the decree, but a condition had arisen regardless of the question who was to blame, in which a little invalid girl was found to be in destitute and necessitous circumstances, and it would seem that the mother was unable to provide for her, supposedly having spent the proceeds of the property set aside therefor, and it must be assumed that the father refused to make further provisions. The question then arose whether the state should enforce its statute covering the desertion by fathers of their minor children or leave the wife subject to the possible outcome of

a possible attempt by her to have the decree in the divorce case further changed. It would seem from what we know of the divorce case which was before us and the records therein, that the father is a business man able to make suitable provision for his child, and it would also seem so by the judgment rendered by the court below in this proceeding. If this is true, then it is apparent that he could have avoided prosecution by making suitable provision; and having neglected and refused to do so, we can find nothing in the statute or authorities cited to justify any sufficient reason for holding that the state as a party could not proceed against him as was done in this case.

Marriage is voluntary, a status usually sought by the suitor. To bring children into the world is a responsibility graver and more momentous than some persons realize. The rules of the law and the dictates of present civilization demand that the father take care of his offspring. It seems strange that so natural and tender a duty should need to be enjoined and even enforced, and happily such need does not exist with reference to the great majority. But unfortunately there are those who become lost to the promptings of parental love, to the direful necessity of a neglected wife, the pitiable distress of a helpless child; and are unmoved by instincts which usually preclude one from braving the opinion of an outraged neighborhood. It is on account of such degraded specimens of humanity that such laws are enacted, and already the records of this court have repeatedly witnessed the need for such legislation. Being enacted, the act, like all others, must of necessity cover cases of the most shameless disregard of conjugal or parental duty, as well as those which merely come within its provisions by reason of circumstances over which the one charged may have but very partial control. In this unfortunate case Mr. Miller was required to pay the costs and the wife's attorney fee and place in her the title to $11,000 worth of property, a sum which to many would seem not only large, but ample for future needs, if well managed. The wife with the afflicted child seems to have tried divers locations, finally settling in a county adjoining that of the defendant. Whatever her financial skill or experience may have been, it seems that in a few short years after the divorce she found herself with a little afflicted daughter to care for, and no means with which to give her the attention she so much needed. What then? She might doubtless have gone to Crawford county and asked the court to further amend the decree

in view of the changed circumstances and conditions, and that would indeed seem to have been the proper thing to do. But, instead, she appealed to the county attorney who on behalf of the state began this prosecution, and it must be presumed that he investigated and deemed that the proper course to pursue. So the court below had, and this court has for consideration, a case between the state as plaintiff and the former husband as defendant, which must be treated in accordance with the charge made and the facts shown, regardless of what different action might have been brought by the complaining witness. There is no complaint that the able trial court proceeded to judgment without sufficient evidence or that any error was committed save as included within the theories of the situation advanced by the defendant's counsel. While the possibility of penalty is exceedingly severe, the court treated the matter sensibly, and instead of subjecting the defendant—a business man— to imprisonment, ordered him to pay a certain sum monthly for the support of his invalid child.

Whether the improvidence of the wife or the medical attention required for the child; or both, absorbed the allowance made by the court in arranging for the support of the wife and child, the flight of a few years witnessed a plight which needed and demanded relief. The method under review was adopted by the state and approved by the trial court.

We have carefully examined the record and are unable to find any error therein, and the judgment is affirmed.

---

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Neglect of Father to Support His Infant Child—Evidence— Erroneous Instruction—Interpretation of Statute.* In a criminal prosecution of a divorced father under section 83 of the crimes act for neglect or refusal without lawful excuse to support his infant child which had been awarded to the custody of the divorced mother because of its tender age and not because of unfitness on the part of the divorced father to have its custody, it was error to instruct the jury as a matter of law that such failure or neglect was without lawful excuse notwithstanding the evidence that pursuant to the terms of the divorce decree the father had contributed $11,000 worth of property as alimony to the mother and for the support of the child, and after the mother had exhausted all this property the father offered to pay $25 per month toward its support, and offered to take the child and provide for its support and maintenance in his own home, and

offered to return with the mother to the court which awarded to her the custody of the child and submit to any further order made by that court touching such additional contribution as should be required of him .for the child's support.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion on rehearing reversing former judgment of affirmance, filed May 6, 1922. (For original opinion see *ante,* p. 231.)

*Archie D. Neale,* of Chetopa, for the appellant.

*Richard J. Hopkins,* attorney-general, and *Harry Warren,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: A rehearing was granted in this case, not because the court had doubt about the correctness of the matters discussed in the original opinion (*ante,* p. 231), but because a majority of the court have serious misgivings about the justice of the net result. The general statement of the case and opinion as originally written may stand, but must be supplemented by what is here set down.

The statute under which the defendant was prosecuted and convicted is section 83 of the crimes act (Gen. Stat. 1915, § 3410):

" . . . Any parent who shall, *without lawful excuse,* desert or neglect or refuse to provide for the support and maintenance of his or her child or children under the age of sixteen years in destitute or necessitous circumstances, shall be guilty of a crime and, on conviction thereof, shall be punished by imprisonment in the reformatory, or penitentiary, at hard labor, not exceeding two years."

It will be noted that the dereliction of the parent is criminal if done "without lawful excuse."

This court is now inclined to the view that insufficient significance was given to the words "without lawful excuse." Defendant made quite a strong showing of a lawful excuse. Pursuant to the divorce decree the defendant turned over to his ex-wife, the prosecuting witness, $11,000 worth of property, as alimony for herself and for the support of the child. He further offered to pay $25 a month for the support of the child. He further offered to go with the prosecuting witness before the district court of Crawford county which granted the divorce and submit the matter to that court for determination as to what sum or sums he should further be required to pay. The defendant also offered to take the child and provide for its support and maintenance in his own home. In the divorce case the prosecuting witness was only given the custody

The State v. Miller.

of the child because of its tender age at that time, not because of any unfitness on the part of the defendant to have custody of it. The parents had been married only about a year when the divorce was granted. (*Miller v. Miller*, 97 Kan. 704, 156 Pac. 695; *Miller v. Miller*, 103 Kan. 102, 172 Pac. 1010.)

In this view of the case we think the following instructions to the jury when construed together were erroneous:

"11. If you find and believe from the evidence that in the divorce suit brought by Rose C. Miller, his former wife, against the defendant, in the district court of Crawford county, Kansas, the court awarded his former wife, Rose C. Miller, certain property and money to be used for the support of herself and minor child, and you further find that this property or money received from the defendant as in accordance with the decree in the divorce suit above referred to, has been exhausted and that the child of the defendant is now in destitute and necessitous circumstances, the fact, if you find it to be a fact, that the defendant contributed said property or money as provided in said divorce decree, would be no defense in this action.

"12. Evidence has been introduced that the defendant offered to pay $25.00 per month toward the support of his minor child in this county, now unless you find that this sum so offered was adequate and sufficient to support said child and relieve its destitute and necessitous circumstances, if you find it was in destitute and necessitous circumstances, I instruct you that said offer to pay said sum of $25.00 per month would be no defense in this action.

"13. If you find from the evidence that the decree of divorce granted Rose C. Miller by the district court of Crawford county, Kansas, from the defendant, Melvin D. Miller, awarded the care and custody of their minor child to her mother, Rose C. Miller, then if you further find that the defendant offered to take said child from its mother and support her in Crawford county, Kansas, that offer would be no defense in this action."

Another feature of this case which may have led to the conviction of the defendant was instruction No. 8:

"In the same law, it is provided that before the trial of the defendant in each case, with his consent or after the trial, or upon the entry of a plea of guilty or after conviction, instead of imposing the penalty prescribed by law, the court, in its discretion, may make an order and change the same from time to time for a period not exceeding two years, directing the defendant to pay such sum or sums of money as seems reasonable, toward the support and maintenance of his children, and meanwhile permit the defendant to go at large, either with or without security for his appearance."

Under the general rules of trial practice, it was no concern of the jury what the penalty prescribed by statute may be. This court does not feel assured that the giving of this instruction was non-prejudicial.

There are two lines of authorities—(1) that the derelict father may be prosecuted in the county where the child is found in necessitous circumstances, and (2) that the father must be prosecuted in the county where he resides, that is to avoid the somewhat fantastic theory that the crime is of an ambulatory nature. While this court is somewhat committed to the first of these theories, yet in this case, particularly in view of the very persuasive significance attaching to his *prima facie* lawful excuse, it would have better accorded with justice if the machinery of the criminal law in Bourbon county had not been set in motion against the defendant until the civil aid of the Crawford county district court had been invoked by the prosecuting witness.

Reversed.

BURCH, MASON and WEST, JJ., dissenting.