No. 28,868.

THE STATE OF KANSAS, *Appellee*, v. TOM HARNED, *Appellant*.

(281 Pac. 910.)

Opinion filed November· 9, 1929.

*W. H. Wagner,* of Wakeeney, and *E. H. Benson,* of Colby, for the appellant.
*William A. Smith,* attorney-general, *Guido E. Smith,* county attorney, *C. A. Spencer* and *J. H. Jenson,* both of Oakley, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The defendant in this case was convicted of grand larceny, largely upon the evidence of an accomplice. The defendant appeals, urging three errors in particular: that the verdict is contrary to the evidence, that one of the jurors was disqualified, and newly discovered evidence. The discrepancies as to dates are relied upon strongly by appellant to show that the evidence of the state was unreliable and impossible. There appear to be only two positively fixed dates in the testimony of the state; one is January 7, 1928, when the wife of the accomplice sold the cowhide and received a check therefor, which she and her husband say was the hide taken from the stolen cow a week or ten days before and buried in a manure pile during that time; the other fixed date is January 8, 1928, a Sunday, when two hogs were missing from the Zeigler feed

lot. A pool of blood was first noticed that morning, also blood on the fence and marks of dragging the hogs for a short distance on the ground. The conclusion of the defendant is that this blood and these marks were fresh, but the abstract of the evidence does not so state, although such is possible and perhaps more likely to have been recent than otherwise. The accessory witness testified that the two hogs and the cow were taken at the same time; that the hogs were killed there at the feed lot and the cow led to his place and there killed and dressed, where the hogs were also dressed. There is apparently an inconsistency. If the blood and dragging marks were fresh from the night before and the hogs and cow were taken and butchered the same night, the hide of the cow could not have been sold on the afternoon of January 7. But we are not told that the blood and dragging marks were not a day old, neither would the best judgment of observers be necessarily positive along that line. A day earlier would have made this feature of the story possible, although not consistent with the evidence of the accessory that it was a week or ten days before the 7th. Or, if the blood and marks were fresh, the cow might have been taken earlier than the hogs. However, the witness would then be in error as to their having been taken together the same night. While truthful stories should be consistent, and all the parts be in harmony, yet it is a rare incident that they harmonize completely. People do not remember dates and no positive dates were given here from the memory of any of the witnesses. Records were resorted to for both dates given. Aside from the record of these two dates, all the witnesses spoke of the time as being the last part of December or early part of January.

Another suggestion of possible mistake in the evidence is as to this hide being off the stolen cow. Inconsistencies in testimony to be serious enough to require a reversal should ordinarily rest on something more than arbitrary dates on one hand and approximate dates from memory on the other. This as well as the two other points alleged as errors were included in the motion for new trial, which was fully presented to the trial court and overruled.

Quite a little is said, as is often done in earnest argument of the advocate, of the weakness and absurdity of some of the state's testimony in the face of the strong and positive evidence of the defense to the contrary, but we must leave that part of the case entirely to the jury and the trial court.

Evidence was introduced orally before the court on the motion for new trial to the effect that one of the jurors had a short time prior to the trial expressed an opinion that the defendant ought to be convicted. The juror when called positively denied any such conversation and reasserted that he had not prior to the trial formed or expressed any opinion as to the defendant's guilt or innocence. It is not usual to disturb the finding of the trial court under such circumstances where the evidence on the motion for new trial was oral.

"On motion for new trial, where the truth of the answers given by a juror concerning his qualification to sit as such is questioned and evidence is introduced tending to show that the juror had not answered correctly and other evidence that he had answered truthfully is presented, the finding of the trial court that the juror was qualified will not be disturbed in this court." (*State v. Nixon,* 111 Kan. 601, syl. ¶ 2, 207 Pac. 854. See, also, *State v. Moore,* 79 Kan. 688, 100 Pac. 629; *State v. Gardner,* 126 Kan. 803, 271 Pac. 280.)

The newly discovered evidence which appellant urges as a ground for new trial is that of Robert Bursk, whose name was mentioned for the first time in this connection by the accessory witness upon the trial as being one and the only one to whom the accessory witness had told the story of the larceny committed by himself, the defendant and one Frank Carnes, and that he had told it to Bursk about ten days after it occurred and when Bursk was taking dinner at the home of the witness. In conjunction with the proposition of newly discovered evidence, the appellant also presents the further assignment of error—accident and surprise which ordinary prudence could not have prevented, and refers to the first mention of the name of Bursk as one having been told about the theft. Our attention is also called to the fact that this same witness did not mention anything about Bursk in his testimony on the preliminary hearing, and when asked said he had not told the matter to any one except the county attorney about ten months after it occurred. The record shows that a subpoena was issued on request of defendant for Bursk during the trial, but it was returned not found. The evidence shows that considerable effort was made by the defendant to locate Bursk immediately after the trial, but without avail. The defendant then made and presented an affidavit on the hearing of the motion for new trial setting forth his effort to get this newly discovered witness, and then stated what he believed would be his testimony if procured, and his belief that he could be found. We are inclined to think a sufficient showing of diligence has been made to entitle the defendant to a con-

sideration of the evidence this absent witness would give if personally present. That part of the defendant's affidavit is as follows:

"My name is Robt. Bursk; my residence is Logan county, Kansas; that during the months of December, 1927, and January, 1928, I was working for Bruce Bierce and living at his place east of Oakley, Kan., in Gove county, Kansas, and that I was at his place during all of said period of time. That at said time the said Bursk was acquainted with the defendant Tom Harned and Frank Carnes; that at no time during the above mentioned period of time did the said Tom Harned and Frank Carnes, or either of them, come to the home of Bruce Bierce, located as aforesaid about three miles east of Oakley, Kan., in Gove county, Kansas, in the nighttime, or any other time, and help the said Bruce Bierce butcher a cow and two hogs, or in fact help or assist in butchering any animal or animals of any sort or kind; that said Bursk was present at the said Bierce home every evening and night during the above mentioned period of time; that said Harned and Carnes did not at any time during said period of time take breakfast or any other meal or meals at the Bierce home."

Bierce is the name of the accessory witness, and he had testified that the defendant and Carnes had stayed for breakfast at his house, where the butchering was done. When carefully analyzed, the evidence ascribed to this absent witness is purely contradictory of the evidence of the accessory witness Bierce. In addition to preliminary statements of knowing the parties and staying at Bierce's place during the time in question, the affidavit contains three specific denials of the testimony of Bierce, viz., that neither the defendant nor Carnes was at the Bierce place during the time he was working for Bierce during the months of December and January either at night or any other time; that they did not help Bierce butcher two hogs and a cow, or any other animals, there during that time; that they did not take breakfast or any other meal at the Bierce place during the period. All this seems to be contradictory or impeaching evidence. It furnishes nothing new along any line, it simply impeaches the statements of Bierce. On the other hand, it to some extent could be called cumulative, for the wives of the defendant and Carnes testified that their respective husbands were not absent from their homes any night during that period. Giving his testimony the widest range possible, we are unable to avoid calling it impeaching or contradictory testimony. Unless it is something more than that, it is not sufficient under the rules to justify the granting of a new trial. Cases are numerous and positive along this line, to the effect that a new trial will not be granted upon the ground of newly discovered evidence when such evidence is merely of an impeaching character.

"A new trial should not be allowed on the ground of newly discovered evidence, when such evidence appears to be competent only for the purpose of impeaching the witnesses of the opposite party, or when it is merely cumulative." (*State v. Smith,* 114 Kan. 186, syl. ¶ 3, 217 Pac. 307.)

"The rule is followed that new trials will not be granted for newly discovered evidence merely of an impeaching character." (*State v. Wallace,* 110 Kan. 565, syl. ¶ 1, 204 Pac. 533.)

It is earnestly and properly urged that possibly the newly discovered evidence might change the result, especially if there is any danger of part of the evidence of the state being false, which is a matter of serious concern in cases like this, but along with that concern is the duty of carefully scrutinizing the newly discovered evidence. And having fully considered this newly discovered evidence, we hold it was of an impeaching character and not sufficient to warrant the granting of a new trial.

Reverting to the question of accident and surprise in connection with the giving of the name of Bursk by the state's principal witness, which he had not mentioned before at the preliminary hearing, we think this does not appear to be within the contemplated scope of the statute. The telling of the details of the theft to Bursk was not a material part of the case. The defendant's guilt or innocence would not be affected in any manner by his not telling the story to anyone or revealing it to a dozen. The only surprise was in giving the name of one not theretofore considered in that connection, who might affirm or deny the testimony given as to having been told of the transaction. The affidavit gives testimony of Bursk on material points, but the only surprise was that the witness had told Bursk the story of the theft, which is not material, although by the development of that information the defendant learned for the first time that Bursk knew some facts material to the issue.

A second notice of appeal has been filed in this case, and by permission of this court the hearing on it was on application of appellant consolidated with the first appeal. For the consideration of such subsequent appeal some dates will be necessary. The case was tried at the regular November, 1928, term of the district court in Thomas county, and verdict was rendered on November 15. The motion for new trial was heard, overruled and judgment rendered on November 26, and appeal was filed in this court January 28, 1929. On January 26 an affidavit was made by Robert Bursk covering the same state of facts as contained in the affidavit of the

defendant as newly discovered evidence, and many additional matters. On the same day a transcript of the evidence of Robert Bursk given in the trial of Frank Carnes was filed in this case in the district court, and on March 29, 1929, a second motion for new trial in this case was filed and presented to the district court of Thomas county. In the meantime, a new term of court had commenced in Thomas county, convening under the statute on the third Monday, or March 18, 1929, and a new district judge was then occupying the bench of that county. When the second motion for new trial was presented, the court refused to take jurisdiction, and from that ruling on March 29 an appeal was filed in this court on April 24, 1929.

The refusal of the district court to take jurisdiction of the cause after it had been appealed to this court and after the end of the term of court at which the judgment was rendered, was correct.

"During the term at which judgment has been rendered the district court has power to set aside an order denying a motion for a new trial, to set aside the judgment and to grant a new trial, although an appeal has been taken to the supreme court." (*State v. Langmade,* 101 Kan. 814, syl. ¶ 1, 168 Pac. 847.)

"If the motion for a new trial, for such reasons, is not presented or filed until after the term has ended and the court has finally adjourned, the supreme court cannot consider or review the errors alleged in the motion." (*Glass Co. v. Bailey,* 51 Kan. 192, syl., 32 Pac. 894. See, also, *Clement v. Hartzell,* 60 Kan. 317, 56 Pac. 504; *Sheahan v. Guaranty Co.,* 99 Kan. 704, 163 Pac. 172; *Welling v. Welling,* 100 Kan. 139, 163 Pac. 635; *Heston v. Finley,* 118 Kan. 717, 720, 236 Pac. 841.)

See, also, R. S. 62-1414 and *State v. Wellman,* 102 Kan. 503, 512, 170 Pac. 1052, with reference to motions for new trial in some particulars in criminal matters being subject to the provisions of the civil code.

We find no error in the record or proceedings under either appeal. The judgment is affirmed.