MODIFIED OPINION[1]

IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,350

STATE OF KANSAS,
*Appellee*,

v.

BRIAN BECK,
*Appellant*.

SYLLABUS BY THE COURT

1.

When a statute is plain and unambiguous, appellate courts should refrain from reading something into the statute that is not readily found in its words.

2.

Kansas does not require the display of the state name on license plates issued in the state except on registration decals.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 26, 2024. Appeal from Geary District Court; COURTNEY D. BOEHM, judge. Oral argument held November 12, 2024. Original opinion filed July 3, 2025. Modified opinion filed October 10, 2025. Judgment of the Court of Appeals affirming the district court is reversed on the issue subject to review. Judgment of the district court is reversed on the issue subject to review, and the case is remanded with directions.

---

[1] **REPORTER'S NOTE:** Opinion No. 126,350 was modified by the Supreme Court on October 10, 2025, in response to the Appellee's motion for rehearing or modification. Modified language is at slip op. at 1, 11, and 12.

1

*Kasper C. Schirer*, of the Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: Casual observation of vehicles on the road suggests that many Kansas drivers have frames around their license plates that partially obscure printing on the plates. These frames may be placed by the dealers selling the cars, or they may be installed by the drivers themselves, promoting a school or a sports team or a cause. We now address whether those many drivers are unwittingly violating state law, subjecting them to stops and seizures by law enforcement.

Brian Beck appeals from a district court decision denying his motion to suppress evidence seized from his vehicle. For multiple reasons, we find that the district court applied improper standards for determining whether law enforcement had reasonable suspicion of criminal activity that would justify a stop and subsequent search of his car.

FACTS AND PROCEDURAL BACKGROUND

On March 2, 2021, Geary County sheriff's deputy Bradley Rose was patrolling on Interstate 70 when a car Beck was driving passed him. Beck was committing no driving infractions, but a frame around his license plate partially obstructed the state name on the plate. Deputy Rose pursued Beck's car and executed a traffic stop. After both vehicles had stopped and while still seated in his car, Rose reported to dispatch and requested information about a plate that was "Illinois Charles John 14442," referring to an Illinois plate with the alphanumeric identifier CJ 14442.

Rose approached Beck's car and asked him for his driver's license and proof of insurance. Beck appeared "extremely nervous" because his hands were shaking, and he was breathing deeply. Beck explained that he was driving from Springfield, Illinois, to Oak Grove, Missouri, but he "got lost."

Rose intended to give Beck a written warning, but, because of the odd statement about his destination and his nervous behavior, Rose called for assistance from a deputy with canine support. The dog alerted to the back driver's side door. Beck then told the deputies if they wanted to they were free to search the car. They found a satchel in the back seat containing two bags containing a total of 2.13 pounds of methamphetamine. During the search of the car, Beck ran back to his car and attempted to drive away, and the deputies had to wrestle him down in order to gain control over the situation.

The State charged Beck with one count of possession of methamphetamine with the intent to distribute, one count of possessing a controlled substance without a drug tax stamp, and one count of interference with law enforcement.

Beck filed a motion to suppress all the evidence obtained from the search and seizure, alleging Rose lacked reasonable suspicion to stop him. Following an evidentiary hearing, the district court denied the motion. At trial, Beck renewed his objection relating to suppressing the evidence, which was overruled. The jury found Beck guilty on all three counts. Beck appealed to the Court of Appeals.

A panel of that court affirmed the convictions in *State v. Beck*, No. 126,350, 2024 WL 1827298 (Kan. App. 2024) (unpublished opinion). Beck petitioned this court for review over four issues:  the interpretation of the Kansas license plate display statute; a jury instruction on permissive inference; the admission of testimony about personal use of methamphetamine; and cumulative error. This court granted review with respect to the first issue only.

3

Rose testified he executed the traffic stop because Beck's rear license plate had a frame around it partially blocking the view of the state issuing the plate. Whether the partial obstruction of the state name constituted a violation justifying a traffic stop is at the core of this review. The district court agreed with the State that the partial obstruction of the word "Illinois" justified the stop and made the results of the search of Beck's car admissible at trial.

This court reviews a district court's findings of fact regarding a motion to suppress to determine whether those findings are supported by substantial competent evidence. The court reviews the district court's ultimate legal conclusion de novo. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). The State has the burden of proving the search and seizure was lawful. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022).

Traffic stops are seizures subject to Fourth Amendment analysis. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). Analogous to investigative detentions, traffic stops are scrutinized for lawfulness under the two-prong analysis set out in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The first prong addresses "whether the officer's action was justified at its inception." 392 U.S. at 19-20. The second prong is whether the detention "was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20.

To render the seizure constitutionally reasonable, an officer must have reasonable suspicion that an offense is occurring, has occurred, or is about to occur. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). If so, the officer may stop the vehicle to investigate the suspected violation. The officer may detain the vehicle and its occupants for the time reasonably necessary to conduct that investigation and to issue a citation or take other action if the circumstances establish probable cause to believe an offense has

4

been committed. *Jones*, 300 Kan. at 639-40. An officer conducting a routine traffic stop typically may request the driver's license and the vehicle registration and run a computer check to verify that information and to look for outstanding warrants. *State v. Morlock*, 289 Kan. 980, 985-86, 218 P.3d 801 (2009).

The inquiry here is whether Rose had reasonable suspicion that Beck violated "any one of the multitude of applicable traffic and equipment regulations" of Kansas. See *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The validity of the vehicle stop therefore depends on how the statutes governing license plates are to be understood. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). We begin by looking to the plain language of the statute, and if the language of the statute is plain and unambiguous, we do not speculate about legislative intent and we will not read something into the statute that is not readily found in its words. *State v. Kerrigan*, 317 Kan. 683, 686, 538 P.3d 852 (2023).

The statute at the core of this case is K.S.A. 8-133, governing the display of license plates. The relevant part reads:

> "(a) The license plate assigned to the vehicle shall be attached to the rear of the vehicle and shall be displayed during the current registration year or years. . . .
>
> . . . .
>
> "(c) Every license plate shall at all times be securely fastened to the vehicle to which it is assigned, to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate. *The license plate shall be fastened in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible*." (Emphasis added.)

5

K.S.A. 8-149 makes a violation of K.S.A. 8-133 a misdemeanor subject to a fine not exceeding $2,500 or imprisonment of no less than 30 days or more than 6 months.

K.S.A. 8-133 does not define what the phrases "clearly visible," "free from foreign materials," and "clearly legible" mean. This has not prevented courts from construing and applying K.S.A. 8-133, but this court has not considered these questions until now.

Although the statute has been the law of this state since 1929, the first appellate case to discuss the statute was *State v. Hayes*, 8 Kan. App. 2d 531, 660 P.2d 1387 (1983). The *Hayes* court considered a stop of a car where "the state designation was not visible," and the officer conducting the stop was not able to identify the state issuing the plate. *Hayes*, 8 Kan. App. 2d at 531. The *Hayes* court held that the purpose of K.S.A. 8-133 is to determine whether a vehicle is stolen, whether it is properly registered, or whether the occupant of the vehicle may be suspected of a crime or considered dangerous. 8 Kan. App. 2d at 533. The court also held that the Kansas display statute applies with equal force to vehicles that are licensed in another state. 8 Kan. App. 2d at 533. The court concluded that, because the word "Indiana" was obscured by a frame, law enforcement had probable cause to stop the vehicle for its violation of K.S.A. 8-133 and make a subsequent arrest for marijuana that was plainly visible in the vehicle. 8 Kan. App. 2d at 533.

Over time, other cases have addressed the statute and have assumed that the legible display of the state name is an integral part of the statutory requirement. Of particular interest is *United States v. Unrau*, No. 03-40009-01-SAC, 2003 WL 21667166 (D. Kan. 2003) (unpublished opinion), in which a ball hitch was positioned behind the license plate, which prevented "[the] officer from reading the entire plate while following at a reasonably safe distance." *Unrau*, 2003 WL 21667166, at *3. The federal court held that the presence of the ball hitch sufficed to justify the stop. 2003 WL 21667166, at *3.

6

*Unrau* presented two problems beyond assuming that the legible display of the state name is part of the statutory requirement. First, the statute says nothing about "following at a reasonably safe distance." That was a qualification that the federal court created, adding language to the statute that the Legislature did not enact. Second, *Unrau* misquoted *Hayes*. *Unrau* states: "The Kansas Court of Appeals [in *Hayes*] has interpreted K.S.A. 8-133 as meaning 'that all of the tag must be legible' and, therefore, it follows that the all of the tag [*sic*] also must be 'visible.'" *Unrau*, 2003 WL 21667166, at *3. But *Hayes* did not state that "all of the tag must be visible." *Hayes* only stated that the state name must be "legible." 8 Kan. App. 2d at 532.

The "test" that the *Unrau* court created is highly impractical. A "safe driving distance" varies with road speeds and weather and lighting conditions. From immediately behind a vehicle, at, say, a traffic light, both the registration decal and the alphanumeric display may be "clearly legible." Driving through an urban school zone, at a distance of a couple of car lengths perhaps only the alphanumeric display may be clearly legible in good viewing conditions. The color of the registration decal may be discernible, but not the information on it. At multiple car lengths, only the alphanumeric display may be clearly legible. At highway speeds and safe driving distances measurable in hundreds of feet, none of the information on a Kansas license plate may be clearly legible. And weather conditions, such as fog or rain or bright sunlight, may dramatically change those distances.

We accordingly reject a rule that focuses on a single fact without regard for the totality of the circumstances. Instead, when deciding whether an officer has reasonable suspicion that a driver has violated K.S.A. 8-133(c), courts should apply the objective standard used in other vehicle stops implicating the Fourth Amendment. This means that courts are to decide whether a reasonable officer would have reasonable suspicion that, under the totality of the circumstances, the license plate was not maintained in a

7

condition to be clearly legible. The distance from which an officer observed the license plate may be relevant to this inquiry, but it is not a controlling legal standard.

Although it rested on a shaky foundation, *Hayes* and *Unrau* sired a progeny of cases that relied on their judicially created rule. See, e.g., *United States v. Granados-Orozco*, No. 03-40035-01/02-SAC, 2003 WL 22213129, at *4-5 (D. Kan. 2003) (unpublished opinion); *United States v. Rubio-Sanchez*, No. 05-40081-01SAC, 2006 WL 1007252, at *1 (D. Kan. 2006); *United States v. Garcia-Medina*, No. 06-40129-01-SAC, 2007 WL 1266818 (D. Kan. 2007) (unpublished opinion); *United States v. Garcia-Medina*, No. 06-40129-01-SAC, 2007 WL 1266818 (D. Kan. 2007) (unpublished opinion); *State v. Moss*, No. 122,775, 2020 WL 7086182 (Kan. App. 2020) (unpublished opinion).

And the district court in the present case applied the "safe following distance" test originating from *Unrau*. The court held:

> "The Kansas Court of Appeals has held that a license plate, or temporary tag, must be clearly legible by an officer at a safe following distance. . . .

> "Lt. Rose testified that he could not read the name of the issuing state on the Defendant's license plate because of a plate bracket that was obstructing the state name at the top of the plate and any writing at the bottom of the plate. Therefore, it was not clearly legible. Law enforcement had reasonable and articulable suspicion to conduct the traffic stop."

In affirming the district court, the Court of Appeals cited the test from *Unrau* and subsequent decisions, but decided it was not essential to deciding the case:

> "The district court did not even need to rely upon the [safe following distance test] to uphold the constitutionality of the initial traffic stop because Beck's license plate was

8

neither clearly visible nor clearly legible even from 2 feet away. If half of a word is covered, it is not clearly visible and clearly legible, no matter how close you get to it. The fact that an observer might eventually be able to discern the half-covered state name by deciphering other clues on the license plate does not mean it is 'clearly visible' and 'clearly legible.'" *Beck*, 2024 WL 1827298, at *9.

But the Court of Appeals went even further. It decided that the statute "prohibits covering half of the state name on a license plate, regardless of its legibility from a given distance." *Beck*, 2024 WL 1827298, at *9. The application of K.S.A. 8-133 has thus made a wide U-turn from the original statutory language: in the view of at least some courts, it no longer matters whether a license plate is clearly legible.

This determination is at odds with the conclusion of the federal district court in *United States v. Carter*, No. 02-40134-01/02-RDR, 2003 WL 22077684 (D. Kan. 2003) (unpublished opinion). There, the court was faced with a similar factual situation, where a vehicle had a license plate frame that obscured the top half of the letters spelling Ohio. The question before that court was much the same as the question that was before the district court in this case: would a half-obscured but readable state name justify a stop for violating K.S.A. 8-133? The *Carter* court suppressed the evidence found in the vehicle, holding that a state name that was half obscured was "not difficult to read" and the officer was able to identify the van despite the partial obstruction. The court found there was no probable cause or reasonable suspicion that the vehicle was in violation of K.S.A. 8-133. *Carter*, 2003 WL 22077684, at *2, 3.

As we explain below, we reject the analytic framework adopted by the lower courts and their conclusions of law because the state name is not part of the information that is required to be printed on a license plate so that it is easily read.

*Applying K.S.A. 8-133*

We begin our analysis with the plain language of the statutes governing the display of license plates.

K.S.A. 8-147 sets out the requirements for manufacturing Kansas license plates. The statute requires that plates generally must display a combination of letters and numbers. It also requires that the "letters and numerals of such license plates shall be in such contrast of colors to the background of the license plate as to make such letters and numerals easily read." The statute further requires that each plate must display a registration decal, and it sets out what must be on the decals. The alphanumeric requirement is modified by K.S.A. 8-1,141, which allows personalized license plates.

But no statute requires displaying the state name in an easily readable fashion. There is no standard for how the state name is to be displayed, and the display varies greatly from design to design and from state to state. The only requirement relating to the state name is set out in K.S.A. 8-132(a), which requires that the "name of the state, which may be abbreviated" is to be included with the display of the "year or years for which it is issued," both of which can be found on the registration decal.

Likewise, K.S.A. 8-133, governing the display of license plates, does not mention display of a state name. The statute requires only that the license plate "shall be maintained free from foreign materials and in a condition to be clearly legible." K.S.A. 8-133(c). In fact, no Kansas statute requires that a state name must be visible on a license plate except for the information that can be determined from the registration decal.

No statute requires displaying the Kansas state name anywhere other than on the registration decal, where it may be abbreviated. K.S.A. 8-147 states that the alphanumeric display must be "easily read." It places no such requirement on anything else printed on a

10

license plate, whether it is an "I'm Pet Friendly" logo or a state name. As a consequence, not displaying the state name in a "clearly legible" manner cannot be a violation of the law and cannot constitute reasonable suspicion or probable cause to execute a traffic stop.

We do not need to determine whether Illinois requires the prominent or clearly legible display of its state name on its license plate. Kansas courts and law enforcement do not have jurisdiction to enforce the penal laws of other states. See, e.g., *In re Fowles*, 89 Kan. 430, Syl. ¶ 1, 131 P. 598 (1913); *Machinery Co. v. Smith*, 87 Kan. 331, 124 P. 414 (1912); cf. *State v. Verge*, 316 Kan. 554, Syl. ¶ 2, 518 P.3d 1240 (2022) (Kansas courts have jurisdiction to convict individuals committing violations of Kansas criminal laws in Kansas).

K.S.A. 8-138a addresses "reciprocal privileges" of vehicle owners who are not residents of Kansas. Such owners, when duly licensed in their states of residence, have "the privilege of operation of any such vehicle within this state to the extent that reciprocal privileges are granted to residents of this state by the state of residence of such nonresident owner." K.S.A. 8-138a.

This simply means that drivers of cars owned and registered in other states do not have to be registered in Kansas under Kansas laws in order to travel within the boundaries of this state. It does not task Kansas law enforcement officers with knowledge of and enforcement of the laws of other states. If a vehicle registered in Illinois is driven on a Kansas roadway and the alphanumeric display is obscured, then that would be a violation of Kansas law. If the state name is obscured, that is not a violation of Kansas law because Kansas does not require display of the state name except on the registration decal.

District courts will still face the task of determining whether an officer's stop and seizure was reasonable. The courts will have to evaluate the credibility of witnesses,

11

including law enforcement officers, and independently examine the evidence to determine whether a reasonable officer would have reasonable suspicion that, under the totality of the circumstances, the license plate was not maintained in a condition to be clearly legible. See, e.g., *Carter*, 2003 WL 22077684, at *2, 3 (court independently evaluated condition of license plate with state name half obscured and concluded it was "plainly and easily capable of being read and seen").

CONCLUSION

The obstruction of the state name will not be deemed a statutory violation because the statutory scheme does not require that the state name be printed in such a manner as to be clearly legible.

We reverse the district court ruling denying Beck's motion. We reverse those convictions that are based on the admission of evidence obtained during the search of his vehicle. On the issue subject to review, we reverse the decision of the Court of Appeals affirming the convictions. Finally, we remand the case to the district court for a new hearing based on our interpretation of K.S.A. 8-133 to decide whether law enforcement had constitutionally valid grounds for making the stop and seizure, and if not, whether an exception to the exclusionary rule applies.

Judgment of the Court of Appeals affirming the district court is reversed on the issue subject to review. Judgment of the district court is reversed on the issue subject to review, and the case is remanded with directions.